## WIMPEY *v.* SMART *et al.,* executors.

1. When one owning land sells a part of it, reserving in the deed an alleyway for the common use of the part conveyed and the part reserved, and subsequently conveys the remainder, giving the alleyway as a boundary, the right of common of easement in the way passes under the second deed as appurtenant to the land conveyed.

2. Where the grantee in the first deed erects a permanent structure which encroaches upon a portion of the alley, which is continuously maintained for more than twenty years without objection, the common of easement on that portion of the alley encroached upon is lost to the grantee in the second deed and his privies in estate.

3. A conveyance by the executors of the grantee in the second deed to a purchaser after they had lost the common of easement over that part of the alley covered by the structure, wherein the land is described as " commencing on the East side of Peachtree Street, at the North line of T. L. Langston's lot, and extending thence North along the East side of Peachtree Street forty-nine (49) feet to a ten (10) foot joint alley, thence East along said alley two hundred (200) feet to the R. C. Mitchell lot, thence South forty-nine (49) feet to T. L. Langston's lot, and thence West along said Langston's line two hundred (200) feet to the beginning point," will not operate so as to imply a covenant of easement in that part of the alley covered by the encroachment.

JANUARY 9, 1912.

Complaint. Before Judge Ellis. Fulton superior court. September 30, 1910.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff in error.

*Anderson, Felder, Rountree & Wilson* and *L. Z. Rosser,* contra.

EVANS, P. J.  The defendants in error, Harriet E. Smart and Arthur T. Smart, executors of A. G. Smart, on April 1st, 1908, sold a city lot to W. E. Wimpey for $20,000.  The vendee paid $4,000 cash, and gave his notes for the remainder; and the vendors executed to him a bond for title, obligating themselves to make a good and sufficient title to the premises to the vendee upon his payment of the balance of the purchase-money.  In the bond for title the premises were described as "all that tract or parcel of land lying and being in the City of Atlanta, in the fourteenth district of said county, and being a portion of land lot No. Fifty-One (51), and described as follows:  Commencing on the East side of Peachtree Street, at the North line of T. L. Langston's lot, and extending thence North along the East side of Peachtree Street forty-nine (49) feet to a ten (10) foot joint alley, thence East along said alley two hundred (200) feet to the R. C. Mitchell lot, thence South forty-nine (49) feet to T. L. Langston's lot, and thence West along said Langston's line two hundred (200) feet to the beginning point, and having thereon a two-story frame dwelling and known as No. 263 Peachtree Street, between Harris and Baker Streets, and being the land conveyed by deed from Mrs. Fowler to the said A. G. Smart, by a deed recorded in Deed Book, F-4, page 18, on Feb. 10, 1892."  The vendee failed to pay the purchase-money notes at maturity, and the vendors brought suit thereon.  The defendant pleaded partial failure of consideration, in that an abutting landowner had made a permanent encroachment on the alley, which encroachment had existed for more than twenty years, and reduced the width of the alley at the place of encroachment to five and one half feet.  After the evidence was closed a verdict was directed for the executors for the full amount of the notes sued on.  Wimpey excepted.

It appeared on the trial that Mrs. Flora Fowler owned a lot of land in the city of Atlanta, abutting on Peachtree street and embracing the premises sold by the executors of Smart to Wimpey.  On November 24, 1874, Mrs. Fowler conveyed to W. L. Goldsmith a part of the lot described as fronting fifty feet, more or less, on the east side of Peachtree street, adjoining the land of Mrs. Fowler and Dougherty, extending back two hundred feet to Mr. Mitchell's lot, with a ten-foot alley between the parties to the deed, extending back two hundred feet, for the mutual benefit of both parties

to the deed, unless a ten-foot alley be opened in the rear of the lot extending from Harris to Baker street; then said ten-foot alley shall be for the exclusive use of Goldsmith. Through mesne conveyances the title to this lot, with the same alley privileges, passed to the present owner. In the year 1876 or 1877 Goldsmith, the then owner of the lot, built a house on it, which encroached about four and a half feet on the alley between Mrs. Fowler and himself, and the house is still standing as originally constructed. On February 10, 1892, Mrs. Flora Fowler conveyed to A. G. Smart the other part of her lot, describing the land conveyed as "commencing on the East side of Peachtree Street, at the North line of T. L. Langston's lot, and extending thence North along the East side of Peachtree Street forty-nine feet to a ten-foot joint alley, thence East along said alley 200 feet to R. C. Mitchell's lot, thence South 49 feet to T. L. Langston's lot, and thence along said Langston's line 200 feet to the beginning point." When the executors of A. G. Smart sold to Wimpey, the owner of the land on the opposite side of the alley had encroached upon the alley by maintaining a permanent structure thereon for more than twenty years. The encroachment began about thirty feet on the alley from Peachtree street, projecting in the alley at the furthest point four and one half feet, and extending down the alley about thirty-five feet; and neither party controverted that the abuttal owner had prescription to the encroachment. Thus it will be seen that at the time of the sale to Wimpey, the owner of the lot on the other side of the alley had a prescriptive title to the encroachment. Under these circumstances the main and controlling question presented is whether the description of the land as contained in the bond for title from the executors of Smart to Wimpey is sufficient to imply a covenant of easement over the entire alley so as to entitle Wimpey to an apportionment in the purchase-price because of the encroachment on it. When Mrs. Flora Fowler sold a part of her lot to Goldsmith, reserving a ten-foot alley for their joint use, and subsequently sold to Smart the remainder of her lot, the right of common of easement in the alley passed to Smart as appurtenant to the land conveyed. *Taylor* v. *Dyches,* 69 *Ga.* 455. And Smart was entitled to the free and unobstructed use and enjoyment of the alley. *Murphy* v. *Harker,* 115 *Ga.* 84 (41 S. E. 585). When Smart purchased, the encroachment made by Goldsmith, the abuttal owner,

had existed fifteen or sixteen years; and when his executors sold to Wimpey, the encroachment had continued for about thirty years. At the time of Wimpey's purchase his vendors had lost their right of easement over that portion of the alleyway actually covered by the house, and the owner of the house had a prescriptive title to the land upon which it rested.

Where a conveyance of land calls for a street or alley as a boundary, if the grantor has the fee of the land thus referred to, he is estopped to deny that it is a street, and a right of way passes to the grantee by implication of law. *Schreck* v. *Blun,* 131 *Ga.* 489 (62 S. E. 705). As has been well said by the Supreme Court of Oregon: "This doctrine rests upon the fact that the grantor, by describing the land as bounded by a way, when he is the owner of the soil under the way, intends thereby to confer upon the grantee, as appurtenant to the granted premises, the right to use such way, and whether it be deemed to operate as an implied grant, covenant, warranty, or estoppel binding on the grantor, his heirs or assigns, is immaterial." Lankin *v.* Terwilliger, 22 Or. 97 (29 Pac. 268). The necessity that the grantor own the land represented as a street before a covenant of easement over it can be implied is apparent. In the absence of an express grant, a grantor will not be presumed as intending to pass, as an appurtenance to the land conveyed, an easement over the land of another. If he gives a street or way as a boundary, he will be estopped by his deed from denying the existence of the street or way. This estoppel results from the effect to be given to his deed; for every grant should be so construed as to give the grantee the benefits intended to be conferred by the grant, and the grantor will not be permitted to close up the way or do anything that will defeat or essentially impair his grant. Parker *v.* Framingham, 8 Met. 268. When a way is given as a boundary, the implication of a grant of an easement is dependent upon the grantor's ownership of the servient fee; nevertheless he is estopped by his deed from contesting with his grantee the latter's right to use the way, whether the ownership of the servient fee be in him or in another. This distinction has not always been clearly observed in the cases bearing on the question, but where the express point was made the distinction was noted and the case decided accordingly. In Howe *v.* Alger, 4 Allen, 206, the grantor described the prem-

ises conveyed as bounded on the north and south by certain streets, and the grantee sought to charge the grantor in damages for a breach of an implied covenant as to the existence of these streets. The breach assigned was that there were no such streets legally laid out or any right of way on the north and south sides of the lot. The grantor did not own the adjacent land described as streets. It was held that in the absence of an express covenant that there were such streets which should always be kept open for travel or the use of the grantee, a mere recital in the boundary of a street as one of the abuttals would not operate further than an estoppel, as to the grantor and those claiming under him, to deny the existence of such street or way, and to prevent him from interfering with the grantee in the use and enjoyment of the same; and judgment was given for the defendant. In Fulmer v. Bates, 118 Tenn. 731 (102 S. W. 900, 10 L. R. A. (N. S.) 964), the grantor described the land as bounded on the rear by a twenty-foot alley. There was no such alley, nor did the grantor own the adjacent land. The grantee sued to recover damages for an alleged breach of an implied covenant; and the court held that where land in a deed is bounded by a way, if the grantor does not own the land, no covenant will be implied from the reference. And this doctrine is recognized in 1 Tiedeman on Real Property, § 601; 3 Washburn, Real Prop. (4th ed.) 485. In the instant case the easement over that part of the alley encroached upon had been lost on account of twenty years adverse possession, and the abuttal owner had a prescriptive title to it. Therefore, at the time of the execution of the bond for title by Smart's executors to Wimpey, the title to the soil under the encroachment was not in the vendors, and no covenant of easement will be implied from the reference to the ten-foot joint alley as a boundary. We do not think that the word "joint" in describing the alley gives to the transaction a legal effect different from what it would be if the word had been omitted. The word "joint" denotes restriction rather than enlargement in the use of the easement.

The vendee set up in his plea the vendors' assurance that the northern boundary was an alley ten feet wide throughout and extended that width the full depth of the lot, and, having complete confidence in the statements and representations made by the vendors, and the description of the alley as laid in the bond for title, he

accepted the bond for title and closed the trade. We construe the plea and the evidence in support of it to mean that the vendors sold a lot abutting on a ten-foot alley, an easement in which was implied as appurtenant to the land, and that the appurtenance was less extensive in scope than the description in the deed, and that for this reason there was a breach of the implied covenant of easement. As we have attempted to demonstrate, there has been no breach of the implied easement. The evidence falls far short of showing any deceitful representations or that the vendee was prevented by the vendors from knowing of the encroachment, even if he did not actually know the condition of the alley at the time of his purchase. The rulings upon evidence were in harmony with the rule of law which we have applied in reaching our decision in the case. The evidence demanded the verdict.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*