JOSEPH KELLEY,

*vs.*

WILLIAM C. PHILLIPS.

*New Castle, July* 21, 1922.

Any dedication of a street, by conveyance of land described as bordering on an unopened street as laid out on a city map, is not complete until acceptance by the public, either through action by the duly constituted authorities or by public user.

There can be no acceptance by public user of dedication of part of a street never used by the public.

There can be no acceptance by a city of any dedication of a street, while the property is outside the city limits.

There is no acceptance of any dedication of an avenue by its being designated on the city map as an unopened street.

Acts of a city in improving a street, where an avenue, when opened, would intersect, relative to curb lines, a center stone, fire plug, and removal of trees on sidewalk, appearing to have been done solely with respect to acquisition of the avenue as a public street at some future time, and not accountable for on the theory that the city intended to recognize it as a present highway, *held* not an acceptance of any dedication thereof.

No support of a claim of acceptance of dedication of a street can be had from the fact that for a long period the city did not tax the property, it having thereafter taxed it.

Any implied covenant of right to make private use of an unopened street, by which a deed bounds the lot conveyed, arises only where the grantor owns the bed of the street, and then only in favor of the grantee or his successor in title.

BILL FOR INJUNCTION to restrain the defendant from maintaining certain alleged obstructions in the bed of an alleged public street known as Bayard avenue, and from asserting exclusive ownership in and to the bed of the same.

Bayard avenue, as laid down on the map of the City of Wilmington, extends from Lancaster avenue in a northerly direction to Park Drive, a distance of over fifteen city blocks. From Lancaster avenue (an extension of Front street) to Third street, it is an unopened street; from Third street to Park Drive, it is an opened street.

The complainant owns a residential property fronting one hundred and fifteen feet on Lancaster avenue and running back therefrom two hundred and fifty-seven feet six inches along the westerly side of what would be Bayard avenue if the same were opened, to the southerly side of Second street extended, but not yet opened. The defendant owns a residential property fronting eighty-four feet on Lancaster avenue and running back therefrom along the easterly side of Bayard avenue if the same were opened, to the southerly side of Second street extended, but not yet opened.

Bayard avenue as laid down on the city map, therefore, lies between the two properties of the complainant and defendant. As projected on the map, it has a width of sixty feet. The bed of the street from Lancaster avenue to Second street is owned by the defendant, who acquired it by deed from Elizabeth D. Connell, administratrix c. t. a. of the estate of Joseph Pyle, deceased, dated May 19, 1921. This deed conveys the land "comprising the bed of Bayard avenue unopened, but as now laid down on the City Map." The bed of Bayard avenue is three feet three inches above the level of Lancaster avenue where the same runs along the front of the properties of the parties, and is four feet six inches above the level of Third street, the other end of the unopened part of Bayard avenue. The present level of the bed of Bayard avenue is its natural level, it never having been graded, except for some filling done by the defendant, who testified that he filled the bed of the street an average of six or eight inches because of the fact that the complainant had raised the grade of his property and thereby caused water to stand in what would be the bed of Bayard avenue. In a general sense, therefore, the topography of the land is as it has always been. Where Bayard avenue, if opened, would enter Lancaster avenue, it is terraced. The bed of the street, lying between the properties of the complainant and defendant, is seeded in grass and presents the appearance of a continuous lawn from one property to the other. It has been so for a great many years, except for a period of five years (1916-1921) when a fence along the westerly side of Bayard avenue gave the appearance of dividing the property of the defendant from that of the complainant. A tennis court has been in the bed of the street since 1885,

and there are now some plantings of shrubbery and evergreens located on the lawn and in the bed of the street.

The properties owned by the parties to this cause, as well as the bed of Bayard avenue, constitute a part of a larger tract of land acquired by Joseph Pyle, deceased, by deed dated February 12, 1876. This larger tract lay on the north side of Lancaster avenue (then known as the Wilmington and Lancaster turnpike road), extended westerly thereon from Pyle lane to what is now Woodlawn avenue, and northerly therefrom over Second street (not yet opened) to Third street, now opened. At the time Joseph Pyle acquired this tract, it did not lie in the City of Wilmington. It was then a part of Christiana hundred and was taken into the corporate limits of the city in 1885. Joseph Pyle lived on the tract and arranged that his children should likewise live there in proximity to him. Accordingly the residence now owned by the complainant was built for one of his sons-in-law, and the residence now owned by the defendant was built by another son-in-law.

How title to the property now owned by the complainant is derived from Joseph Pyle, the record fails to clearly disclose. The sole evidence concerning the complainant's title consists of a deed from George P. Jones, et ux., and Pusey Jones, et ux., to the complainant, dated June 14, 1909. George P. Jones and Pusey Jones are grandchildren of Joseph Pyle. Their deed to the complainant describes the premises conveyed thereby as bounded on the east by the westerly side of Bayard avenue. Whether Joseph Pyle, who owned the bed of Bayard avenue, ever assumed in any conveyance to bound the property thus conveyed to the complainant by Bayard avenue on the east, is not disclosed.

The defendant traces the title to his property to two deeds from Joseph Pyle, et ux,. to William H. Connell, dated respectively November 26, 1883, and January 19, 1884. At the time these deeds were executed, Joseph Pyle was the owner of the bed of Bayard avenue. At that time also, though the Pyle property was not yet a part of the City of Wilmington, the city nevertheless had laid down Bayard avenue on the city map, anticipating the day when the city limits would be extended to embrace the land in question, which as a matter of fact occurred later, in the year

1885. In his deed of November 26, 1883, to Connell (who was his son-in-law), Pyle described the land thereby conveyed as:

"Beginning at the corner formed by the intersection of the northerly side of Lancaster Avenue and the easterly side of Bayard Avenue when opened; thence northerly by said side of Bayard Avenue two hundred and sixty-four feet more or less to the southerly side of Second Street continued; thence easterly along said side of Second Street continued seventy feet to a corner in other land of the said Joseph Pyle; thence southerly parallel to said Bayard Avenue two hundred and sixty-four feet more or less to the northly side of Lancaster Avenue; and thence thereby westerly seventy feet more or less to the place of beginning."

In the deed of Pyle to Connell, dated January 19, 1884, the same land is conveyed and for purposes of more accurate description is described as follows:

"Beginning at the corner formed by the intersection of the northerly side of Lancaster Avenue (formerly the Wilmington and Lancaster Turnpike Road) and the easterly side of Bayard Avenue, when opened; thence northerly by said side of Bayard Avenue, two hundred and sixty-four feet more or less to the southerly side of Second Street extended; thence easterly along said side of Second Street extended, seventy feet to a corner in other land of said Joseph Pyle; thence southerly parallel to said Bayard Avenue, two hundred and sixty-four feet more or less to the said northerly side of Lancaster Avenue; and thence thereby westerly seventy feet more or less to the place of beginning, be the contents thereof what they may. The said unopened streets to be opened and extended in conformity with the present surveys and the plan of the City of Wilmington."

By these two deeds Connell thus acquired from Joseph Pyle title to a lot fronting seventy feet on Lancaster avenue. Later, by deed dated April 14, 1896, he acquired from the executors of Joseph Pyle title to a strip with a fourteen foot frontage on Lancaster avenue, adjoining his seventy foot lot on the east. The deed to the fourteen foot strip described the same as:

"Beginning at a point on the northly side of Lancaster Avenue at the distance of seventy feet easterly from Bayard Avenue and at a corner of land of the said William H. Connell," etc.

The Connell lot, therefore, now owned by the defendant, has a frontage on Lancaster avenue of eighty-four feet, and runs back to Second street extended.

Joseph Pyle erected a fence along the front of the properties

now owned by the complainant and defendant, and across the bed of what would be Bayard avenue, along Lancaster avenue, thus closing in all his property, so that the same, including the bed of Bayard avenue, presented the appearance of private properties throughout the entire length. This fence was erected as early as 1882 and was not removed until the spring of 1921, when it was taken down to make way for the improvement of Lancaster avenue.

Since 1874 Bayard avenue has been laid down on the maps of the City of Wilmington. These maps have been made in accordance with laws and ordinances governing the City of Wilmington. They contain the location and lines of streets whether the same be opened or unopened. Bayard avenue between Lancaster avenue and Third street appears on all the maps as an unopened street.

The city, in the year 1889, defined the grade of Bayard avenue from Lancaster avenue to Eleventh street. But neither the City nor any one else has ever graded that portion of the street from Lancaster avenue to Third street in accordance with the grade lines thus indicated by the city's plan.

In 1892, the city by ordinance defined the width of Bayard avenue throughout its entire length southerly from Delaware avenue. Between Lancaster avenue and Third street, however, this designated width has never been actually laid out on the land itself.

The water department of the city placed a fire plug at the spot which on the map and plans of the city would be the northeast corner of Lancaster avenue and Bayard avenue, and later in 1921 removed it to what would be the northwest corner of the same streets as they appear on the map. Lancaster avenue has for a long time been an open highway and both of the fire plugs were placed by the city within the street lines of Lancaster avenue.

The city collected no taxes on the bed of Bayard avenue since 1884. In 1922, however, it assessed that portion of its bed lying between Lancaster avenue and Second street extended to the defendant and he has been billed for taxes therefor.

In the spring of 1921, the city improved Lancaster avenue where the same runs along the front of the properties of the complainant and defendant, by laying improved pavement in the bed

of the street and constructing a curb and cement sidewalk along the same. Where Bayard avenue, if opened, would enter Lancaster avenue, therefore, the sidewalk and curb along Lancaster avenue is laid across its whole width, running along the edge of the terraced lawn. It appears that both the parties to this cause requested the city, when the work of improving Lancaster avenue was in progress, to continue the Lancaster avenue sidewalk right on across the bed of what would be Bayard avenue when opened. The city agreed to do this if the parties would pay the cost, the sidewalk to remain there until such time as there may be a demand or need for opening Bayard avenue. The sidewalk was laid, the defendant paying all the cost thereof, except for that portion thereof which extends from what would be the complainant's Bayard avenue building line to what would be the westerly curb line of Bayard avenue when opened. The street commissioner of the city, who is also secretary of the street and sewer department, testified that in laying the sidewalk across the bed of Bayard avenue, circular curbs were laid in the Lancaster avenue sidewalk just as though Bayard avenue were opened and the curbs were to be extended up on Bayard avenue on both its east and west sides. These circular curbs, however, go only to the northerly building line of Lancaster avenue. The curved curbs were lined on their outer edges with tar paper and the pavement between them then laid in the Lancaster avenue sidewalk, making, of course, a straight and continuous sidewalk along the northerly side of Lancaster avenue. The purpose of this, he testified, was that, in the future when Bayard avenue might be opened, the pavement running across its outlet into Lancaster avenue might be torn out without disturbing the curbs. In consenting to the laying of the sidewalk across the bed of Bayard avenue, the street and Sewer Department expressly provided that its act in so doing should not be taken as conveying any rights to the bed of Bayard avenue.

The law requires the City of Wilmington to place a stone in the center of all intersecting streets, and the city has placed such stone at the point where the center of the intersection of Bayard and Lancaster avenues would be.

In 1921 the Water Department of the city, previous to the

laying of the improved paving in the bed of Lancaster avenue, laid a water main in that avenue and ran a T. connection therefrom northerly up into the bed of Bayard avenue for a distance of about three and a half feet from the northerly line of Lancaster avenue. The reason for this connection, as explained by the draftsman of the Water Department, is that when the water main was laid in Lancaster avenue, a branch was run from it up towards the middle of the bed of Bayard avenue and a valve set on the northerly building line of Lancaster avenue, so that in the future, when Bayard avenue might be opened, a connection would be ready for the line that would then run up Bayard avenue. Inasmuch as the valve would be apt to go dead if thus left at the end of the T, a pipe (in this instance three and a half feet in length) was run beyond the valve up into the bed of Bayard avenue. This, it appears, is the usual practice of the Water Department. The same thing was done at Third street on its southerly side, where the bed of Bayard avenue (unopened at that point also) would intersect it. When the pipe was run up into the bed of Bayard avenue, the defendant was aware of what was going on and when the matter was explained to him, made no objection.

In 1916, when the defendant's property was owned by Mr. Connell, he (Connell) erected a woven wire fence at a right angle to Lancaster avenue between his property and the property of the complainant, who was then the owner and in possession of the same. This fence ran within a few inches of what would be the westerly side of Bayard avenue when opened, and parallel thereto, thereby inclosing the bed of Bayard avenue within Connell's lawn. The complainant does not appear to have objected to this division fence until after Mr. Phillips, the defendant, became his neighbor. In May, 1921, the complainant cut it down.

The complainant has erected what he calls a temporary fence running down the middle of Bayard avenue from the southerly side of Second street unopened, northerly towards Third street, closing in other land of his lying in the rear of his Lancaster avenue residence.

Bayard avenue has never been opened as a street by the city. It has never been used by the public as a street. The City of

Wilmington has never acquired title to it either by deed or con-demnation.

The bill charges that Bayard avenue is a public street and that the defendant has obstructed the use of the same as such, claiming the right to the exclusive use and enjoyment of the same as absolute owner thereof. It charges that the defendant has among other things made a lawn tennis court on the bed of the street, erected a large wire screen thereon (a backstop for the tennis court), planted trees and shrubbery therein, and erected a fence along the westerly side of Bayard avenue, from Lancaster avenue to Second street, thus completely shutting the complainant off from access to Bayard avenue and depriving him of his rights as an abutting owner and as a citizen in general in and to said avenue.

The bill prays for a mandatory injunction requiring the defendant to take down and remove the said fence upon the bed of Bayard avenue, and to take down and remove the shrubbery, trees, lawn tennis court, and other obstructions placed in the bed of Bayard avenue as above mentioned; also that the defendant be perpetually enjoined from further claiming exclusive ownership in and to the bed of said street, or from in any wise obstructing the same. The bill also asks that the deed from Elizabeth D. Connell, administratrix c. t. a. of Joseph Pyle, deceased, to the defendant, conveying the bed of Bayard Avenue, be delivered up for cancellation.

*Robert G. Harman*, for the complainant.
*William S. Hilles*, for the defendant.

THE CHANCELLOR. The complainant in his brief makes the following propositions:

"Where a person makes a deed and in the deed sells and conveys a lot bordering upon a street or thoroughfare, whether said street be opened or not, and even though it merely be laid out on the map or plan of the city, he thereby

"(a) Covenants with the grantee that there is such a street, and that the grantee may and shall, as a right, use the same as such, and the grantor is, forever estopped from denying there is such a street, or from making any use of the same inconsistent with the enjoyment, easment, and right of way in, to and over the same by the grantee, his heirs and assigns.

"(b) The grantor by selling a lot as aforesaid, and by reference in his deed to said street as laid out upon the city map and plan, even though unopened at the time, dedicates the same to the public, and

"(c) The grantor by selling a lot as aforesaid, and by reference in his deed to a street laid down upon a map, plat, or plan made by himself, even though said street be unopened, dedicates the said street to the public."

At the argument it was conceded that the point designated (c) is not applicable, there being no evidence on which to predicate it. That being so, the propositions designated (a) and (b) are the only ones calling for consideration. I shall condider them in the inverse order of their statement.

First as to (b). I have examined with care the numerous cases cited by the complainant in support of this proposition, and after a mature consideration I find no occasion to refer to them *in extenso*, nor to discuss their rulings. This is so for the reason that if it be assumed that the conveyance of land described as bordering upon an unopened street as laid out on a city map, may be said to consitutue a dedication of the street to the public it is well established in Delaware that such dedication is not complete until the public has accepted the same either through the action of the duly constituted authorities, or by public user. *Fulton v. Dover*, 8 *Houst.* 78, 6 *Atl.* 633, 12 *Atl.* 394, 31 *Atl.* 974; *Attorney General v. Chalfant*, 12 *Del. Ch.* 214, 110 *Atl.* 663, affirmed 12 *Del. Ch.* 389, 113 *Atl.* 674.

The evidence establishes very clearly that the public has never made use of Bayard avenue from Lancaster avenue to Third street. There has, therefore, been no acceptance of the supposed dedication by public user of the street.

Has there been an acceptance by action of the public authorities of the City of Wilmington? The complainant contends that there has been such acceptance. There is no showing of such acceptance on the part of the city by deed to the city, nor is there any claim of such acceptance through condemnation proceedings instituted by the city. The complainant, however, contends that the city did several things which in law are indicative of acceptance of the alleged dedication.

The acts of the city which are emphasized as thus indicating an acceptance are the plotting of the street on the city maps,

the defining of the width of the street and of grade and curb lines, the laying of a water main connection running three feet and six inches from the northerly building line of Lancaster avenue up into the middle of the bed of Bayard avenue, the placing of a stone in obedience to law at a point which would be the center of the intersection of Lancaster avenue and Bayard avenue when opened, the cutting down by the city of two trees standing in the sidewalk of Lancaster avenue in front of the bed of Bayard avenue, and the laying of the circular curbs referred to in the statement of facts preceding this opinion.

The first plotting of Bayard avenue on the city map was in 1874. The conveyances by Joseph Pyle to Connell, which refer to Bayard avenue as laid down on the city map, were in 1883 and 1884. There could not by any possibility have been an acceptance by the city at that time, for the reason that at that time the city limits did not embrace the *locus in quo*. After the city limits were extended, however, other maps of the city showed Bayard avenue. But the testimony is very clear to the effect that wherever Bayard avenue appears on the city maps it always is designated as an unopened street between Lancaster avenue and Third street, and that all that the maps mean to represent is that when the city takes over the street the lines will run as indicated. As to Bayard avenue nothing is gathered from the maps of the city beyond the fact that the city has indicated a prospective street which, when the public needs require, will be taken and opened by the city. The maps, therefore, are only prognostications of the future. They indicate no present intent to take the street.

Other acts of the city with respect to Bayard avenue are of the same character. The grade and curb lines look only to the future. No grading and no curbing on that part of Bayard avenue now in question has ever been undertaken. The placing of the center stone is of no significance as indicating an acceptance of Bayard avenue as a street. The fire plug at the future corner of Lancaster and Bayard avenues, and the circular curbs, are all to be explained solely with reference to the improving of Lancaster avenue, and have no probative value as indicating an acceptance of Bayard avenue as a city street. The same is to be said with reference to the removal of the two trees standing on the sidewalk

of Lancaster avenue. If the complainant can gather any support for his case from the circumstance that the city collected no taxes for the bed of Bayard avenue for a great many years, he is conversely damaged by the fact that in 1922 the city assessed the bed of the street against the defendant and now seeks to collect taxes thereon. As to the running of three feet six inches of water pipe into the bed of Bayard avenue, the reason for it is made clear by the testimony, namely, that it was only to protect the valve on the northerly building line of Lancaster avenue and has no reference whatever to the city's attitude towards Bayard avenue as street existing in the present.

All the acts of the city with respect to Bayard avenue clearly appear from the testimony to have been done solely with respect to the acquisition of Bayard avenue as a public street at some future day, and are in no sense to be accounted for upon the theory that the city has ever intended to recognize it as a present highway.

No case has been cited, and I dare say none can be found, where such acts as are here shown have been held to constitute an acceptance by public authority of a street alleged to have been dedicated to the public.

Assuming, therefore, that there was a dedication of Bayard avenue, yet the essential element of acceptance by the public, which is necessary to complete the dedication, is not shown. This fact makes it unnecessary for me to consider whether as a matter of law the deeds made by Joseph Pyle and the deeds procured to be made by his devisees (wherein such devisees partition that portion of the Pyle land lying north of Second street), in which reference is made in the descriptions to Bayard avenue, do evidence an intent to immediately dedicate that avenue to the public. If I were called upon to consider this question, I would, as now advised, have very serious doubt as to the correctness of the complainant's contention under this head. As to the deeds calling for Bayard avenue north of Second street (procured to be made by the Pyle devisees partitioning the same among themselves), it is to be noted that the portion of the avenue referred to by them does not lie in the block in which the *locus* of the lands here involved lies. They describe land that lies to the north, across

Second street. If those deeds may be said to dedicate Bayard avenue, it might very well be that they dedicate only that portion of the avenue which extends from Second street (unopened) to Third street (opened). And as to the deeds made by Josph Pyle to Connell (quoted in the statement of facts) it might with some force be contended that the language employed, if it indicates a dedication, yet indicates an intent to dedicate only at some future time—a dedication operative only when the city shall choose to accept and open the street. I see no reason why an owner may not in dedicating his land to the public for a street, do so in a way that will enable him to retain its exclusive possession until public authority shall duly open it.

In the case of *In re Van Alst Ave.*, 143 *App. Div.* 564, 128 *N. Y. Supp.* 371, such seems to have been the character of the dedication which the court held it was the intention of the grantor in the deed there involved to make. The court in that case says:

"Both by the construction placed upon the deed by the parties and by its language there was no present use to be made of Van Alst avenue."

And so in this case, from the language employed in the deed of Joseph Pyle to Connell (January 19, 1884), it might be urged with much force that the peculiar language employed speaks only with reference to the future and does not intend a present dedication for immediate public enjoyment unless the city should immediately open the street. Of course, the deed from Pyle's executors dated April 14, 1896, might, on the other hand, have some effect towards rebutting this contention.

But, in the view I take of this case, I am not called upon to consider these questions, holding as I do, that if there was a dedication, the essential element of acceptance by the city is lacking— essential, I mean before the public can claim the street, the same never having been actually used as such.

Second, as to (a). If the contention made under this head be granted full acceptance, consideration of the facts will reveal that it can have no application here. An examination of all the cases cited by the complainant will disclose that where a private right, arising out of an implied covenant, is relied upon, the party relying on such right is either himself the grantee in the deed on

which the implied covenant is based, or is the successor in title of such grantee, and the grantor in such deed is the owner of the land over which the easement is claimed. Such is not the case now before me. The complainant who seeks to raise such an implied covenant derives his title from George P. Jones and Pusey Jones, who conveyed the same to him June 14, 1909. It is true that these grantors in their deed to the complainant described the premises thereby conveyed as bounded on the east by Bayard avenue. But these grantors did not own the bed of Bayard avenue. At least, if they did, the evidence fails to disclose the fact. On what principle, therefore, can it be held that the Jones deed to the complainant may be said to raise an implied covenant as against the owner, that the complainant shall have the right of passage over the bed of Bayard avenue? If a bill had been filed by the defendant, seeking to set up a right of private passage over the bed of Bayard avenue as against the successsors of Joseph Pyle (before the defendant acquired title thereto), then the principle of law urged under the present head, if sound, would be applicable. For in such case the alleged private servitude would be traceable to the owner who had the right to impose it, and would be asserted by the covenantee, or his successor, who would have the right to claim it. But the complainant is in no such position. He is a stranger to any implied covenant that might exist in favor of the defendant, and he shows no implied covenant made by an owner of the street bed in favor of himself, or any of his predecessors. Nor does he show any privity of contract between himself and the defendant, or between any of his predecessors in title and any of the predecessors in title of the defendant.

The complaint has put in evidence as exhibits several deeds made or accepted by the devisees of Joseph Pyle conveying lots north of Second street, all of which lots are bounded with reference to Bayard avenue. These deeds, however, run to parties other than the complainant, and if they can have any effect as raising an implied covenant that there shall be a private right of way over Bayard avenue at any point, such covenant cannot avail the complainant, a stranger thereto.

The foregoing considerations adversely dispose of the contention that there is an implied covenant in favor of the com-

plainant that he shall have a right of way over the bed of Bayard avenue.

. The result of the foregoing is, that Bayard avenue from Lancaster avenue to Second street is not now a public street; that the complainant as a member of the public has no right to the enjoyment of the same as a street, nor has he any private right of easement over the same by virtue of any implied covenant incident to his title.

A decree will therefore be entered dismissing the bill, costs to be paid by the complainant.