Justin J. Powell, Inc., Appellant, *v.* Wian.
Appeal of Humble Oil & Refining Company.

Argued November 16, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John H. Morgan,* with him *David E. Tungate, John R. Miller, Eckert, Seamans, Cherin & Mellott,* and *Miller, Kistler & Campbell,* for Humble Oil & Refining Company, appellant in No. 73, and appellee in No. 76.

*Carl A. Belin, Jr.,* with him *Belin & Belin,* for Justin J. Powell, Inc., appellant in No. 76, and appellee in No. 73.

OPINION BY MR. JUSTICE EAGEN, March 25, 1974:

This is an action in equity instituted by Justin J. Powell, Inc. [Powell], against Alice B. Wian, executrix of the estate of Willard F. Wian, deceased, and Alice B. Wian, an individual, as well as against the Humble Oil and Refining Company [Humble]. Pretrial, the parties agreed to eliminate the estate of Willard F. Wian and Alice B. Wian as parties-defendant, and the action proceeded to trial as Powell v. Humble. After an extended evidentiary hearing, the chancellor entered an adjudication and decree nisi to which both parties filed exceptions. Subsequently, these exceptions were dismissed, and a final decree was entered. Humble filed an appeal [No. 73], and Powell filed an appeal [No. 76]. The appeals were consolidated for argument and will be disposed of in this opinion.

The facts giving rise to the litigation are these.

In 1967, Willard F. Wian and his wife, Alice B. Wian, jointly owned certain undeveloped property in Spring Township, Centre County, which was bisected by Legislative Route 14028. An exit ramp from the Bellefonte interchange on Interstate 80 entered the Wian land and formed a "T" intersection with Legislative Route 14028 approximately in the center of the Wian land. Legislative Route 14028 as it pertains to this intersection was designated by the Pennsylvania Department of Transportation as a "limited access highway."

On January 12, 1967, the Wians conveyed title of a portion of their property to the Sun Oil Company [Sun]. The land so sold to Sun was located to the west of the "T" intersection, described before, and was bounded on the north by Jacksonville Road which ran through the Bellefonte interchange. The deed to Sun included a restrictive covenant in favor of the grantee prohibiting, inter alia, the erection of any building, signs, structures or obstructions within 50 feet of the southerly line of the Jacksonville Road right-of-way for a distance of 750 feet to the east.

On May 15, 1967, the Wians executed an option granting American Oil Company [American] the right to purchase a 200 foot square piece of land which they still owned.[1] This land was situated to the east of the land previously conveyed to Sun.

Subsequently, American engaged R. J. Reese & Associates [Reese] to prepare a survey of the land subject to its option. When the survey was prepared, it disclosed that the westerly boundary line of the land described in the option was 710 feet from the easterly boundary line of the land conveyed to Sun and the westerly boundary line of the optioned property was 60 feet from the easterly end of the established limited access highway. On the survey, this 60 foot intervening space was designated as a right-of-way for W. F. Wian. Upon learning the land, described in American's option, was located 710 feet from the Sun land, Alice B. Wian [Willard F. Wian had died in the meantime] agreed that the land to be conveyed to American would have to be moved 40 feet to the east in order to avoid any conflict with the restrictive covenant in the Sun deed. The Reese survey was revised accordingly, but no change was made in the legend indicating the 60 foot right-of-way for W. F. Wian.

---

[1] The option was later assigned by American to the plaintiff, Powell.

On March 27, 1969, Alice B. Wian, individually, and as executrix of the estate of Willard F. Wian, deceased, executed and delivered to Powell [as the assignee of American's option] a deed conveying title to a 200 foot square piece of land. In describing the land conveyed, the deed first stated: "ALL that certain piece or parcel of land situate in the Township of Spring, County of Centre and Commonwealth of Pennsylvania, bounded and described as follows according to print of survey made by R. J. Reese and Associates, originally dated May 17, 1968, with latest revision date January 31, 1969: . . . ." The deed enumerated a detailed description of the land by lines and distances and described the westerly boundary line thereof as being 100 feet from the easterly extremity of the limited access highway, and further described this boundary line as being "along" an "unnamed 100 foot street."

On April 17, 1970, Alice B. Wian executed an option granting Humble the right to purchase the residue and remainder of the Wian land. Humble then induced the Pennsylvania Department of Transportation to roll back the line of the "limited access" area on the easterly side of the Bellefonte interchange 100 feet to the west. On December 18th, Humble exercised its option and purchased the remainder of the Wian land. Thereafter, it commenced construction of a gasoline service station in the area located between the Powell land and the Bellefonte interchange. Powell instituted this action to enjoin Humble from constructing its service station on any part of the land described in the Powell deed as "an unnamed 100 foot street" contending that the words "unnamed street" describe an easement over the land included within this area.[2] The trial court

---

[2] Powell instituted this injunction action for the reason that it would be economically advantageous for a service station to be situated closer than other stations to the exit ramp near the "limited access" area, as that station would be the first to attract the

sustained Powell's position and granted the requested injunction.

Initially, the trial court maintained that there was an ambiguity in the Powell deed and permitted oral testimony of the facts and circumstances surrounding the preparation and delivery of the deed in an effort to determine the true intent of the parties. Later, however, the court apparently concluded that no ambiguity existed and ruled that the deed in stating the boundary as an "unnamed 100 foot street" gave rise to the implication, in the absence of proof to the contrary, that the grantee acquired an easement over the bed of the unopened street. See *Beechwood v. Reed,* 438 Pa. 178, 265 A. 2d 624 (1970), and *Fidelity-Philadelphia Trust Company, Trustee, v. Forster,* 346 Pa. 59, 29 A. 2d 496 (1943).

To the contrary, Humble contends that since the Reese survey was referred to in the deed in its description of the land conveyed to Powell, this description had the same effect as if the survey were copied into the deed, and, therefore, the survey contradicts the deed as to the existence of or intention to create a 100 foot wide street immediately abutting the Powell land. Consistent with this argument, Humble urges that the conflict between the survey and the deed as to the dimensions and location of the "unnamed street" creates an ambiguity which necessitates oral testimony as to the circumstances surrounding the preparation and delivery of the deed. Humble urges that this evidence confirms that the parties never intended to create a 100 foot wide street abutting Powell's land.

If an ambiguity existed in the deed, the parol evidence which was admitted should have been considered to determine the true intent of the parties. See *Logan*

---

attention of motorists in need of gas who exited from Legislative Route 14028.

*v. Wiley,* 357 Pa. 547, 55 A. 2d 366 (1947). Nevertheless, even when we accept Humble's position that such an ambiguity did exist and the court erred in ruling that the parol evidence was improperly admitted, we find that the court reached the correct conclusion. For that reason, we will affirm.[3]

Our review of the record concerning the facts and circumstances incident to the preparation and delivery of the deed to Powell is persuasive that the Wians intended to create a 100 foot wide street abutting the Powell land, and it was also intended that the Reese survey was to be revised in order to reflect this fact. First, the uncontradicted testimony of R. J. Reese, the surveyor, demonstrated this. He testified in relevant part: "Q. Is there any difference in relation to the notation of right-of-way? A. My description calls for a 100 foot right-of-way. Originally it was only 60. Q. Could you explain to the Court why the notation appears on the final print as 60 feet—a 60 foot right-of-way? A. Well, that might be a little bit hard to explain exactly. Originally, it was 60 feet; and I made a notation here and showed arrows—a dimension of 100 feet; but I didn't change the 60 foot right-of-way on the drawing. It could be an oversight, or it could have been that I didn't think it was necessary to change it. Q. Did your description then show a 100 foot right-of-way? A. The description shows a 100 foot right-of-way . . . ." Second, the testimony of Wians' attorney, Charles C. Brown, Esq., who prepared the deed to Powell further confirms that the Wians manifested the intent to create a 100 foot wide street. Mr. Brown testified: "Q. And between the limited access limit and the property was this 100 foot unnamed street, is that

---

[3] A correct decision will be sustained even if the reason given by the court below to sustain its decision was erroneous. See *City L. O. H., Inc. v. Hotel, M. & C, E, Union,* 413 Pa. 420, 197 A. 2d 614 (1964).

correct?  A. There was a 100 foot space there.  I would not use the language 100 foot unnamed street.  There was supposed to be a space, yes, of 100 feet.  Q. Didn't the deed call for a 100 foot unnamed street between the property and the limited access limit?  A. That is the language of the deed."

Thus, the ambiguity between the deed and the survey as to the dimensions of the right-of-way or street is resolved by the evidence showing that the intention of the parties was to create a width of 100 feet, and, as the trial court correctly noted, there is no ambiguity as to the words "unnamed street" in the deed.

Humble further argues that the words in the deed "unnamed 100 foot street" without a plot, map, survey or some evidence on the land itself as to the street's dimensions and location are insufficient as a matter of law to establish the easement asserted by Powell. The "unnamed street" depicted as a boundary in Powell's deed was not a public road, but was part of the property still owned by the Wians.  In *Beechwood v. Reed,* supra, 438 Pa. at 181, 265 A. 2d at 626, this Court was concerned with the significance of a similar provision in a conveyance.  We stated: "Where the street called for as a boundary is not a public highway nor dedicated to public use, the grantee . . . acquires an easement by implication over it."[4]  Hence, Powell was granted an easement over the "unnamed 100 foot street" which the Wians made a boundary in its deed.  The nonexistence

---

[4] See also the cases and annotations cited within: "Jones v. Sedwick, 383 Pa. 120, 117 A. 2d 709 (1955) ; Philadelphia Storage Battery Company v. Philadelphia, 323 Pa. 17, 186 A. 103 (1936) ; Hawkes v. Philadelphia, 264 Pa. 346, 107 A. 747 (1919) ; Taylor v. Gross, 195 Pa. Superior Ct. 225, 171 A. 2d 613 (1961) ; Vinso v. Mingo, 162 Pa. Superior Ct. 285, 57 A. 2d 583 (1948) ; Tursi v. Parry, 135 Pa. Superior Ct. 285, 5 A. 2d 399 (1938) ; 25 Am. Jur. 2d, Easements and Licenses §25; Goldberg, Sales of Real Estate in Pennsylvania at 114-115 (1958) ; Anno., 46 A.L.R. 2d 461, §2." 438 Pa. at 181, 182, 265 A. 2d at 626.

of a plot or plan laying out with mathematical certainty the exact dimensions of the street mentioned in the deed to Powell does not derogate from the legality of the easement.

"It is generally held that where a street or other way is called for as a boundary in a conveyance of land, and the grantor owns the fee in the land represented as the way or street, he is estopped, as against the grantee, to deny that the street or other way exists, and an easement in such way passes to the grantee by implication of law. In such a case, *it is immaterial that the way to which reference is made does not exist as such at the time of the transfer.*" (Emphasis supplied.) 25 Am. Jur. 2d Easements and Licenses §25 (1966). Moreover, as to this argument Humble stands in the shoes of the Wians. It was therefore immaterial whether a street "as such" existed at the time of the conveyance to Powell and the chancellor was justified under the circumstances in finding the 100 foot right-of-way extended the entire length of the Powell property. This finding is adequately supported by the testimony of Austin O. Furst, Esq., who represented Lawyers Title Insurance Company and Powell in its negotiations for the Wian property. Mr. Furst testified: "Q. Did this 100 foot street cover the entire Wian land between the limited access limit and the Powell property? A. At that time, yes, sir . . . . Q. What was the reason for filling up the entire distance between the limited access and the Powell property on the 100 feet with this street? A. So that no other person or gas station could utilize that area between limited access and the site of the purchase. Q. Was this discussed with Mr. Brown? [attorney for the Wians] A. In just those terms."

In light of the views heretofore expressed in this opinion, it is unnecessary to reach the assignments of error raised by the Powell appeal.

Decree affirmed. Costs on Humble.