438 A.2d 969

Charles W. ECENBARGER and Annelisie E. Ecenbarger

v.

Mildred A. LESOINE and Ross R. Lesoine.

**Appeal of Ross R. LESOINE.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1980.

Filed Dec. 4, 1981.

C. Daniel Higgins, Stroudsburg, for appellants.

John J. Pentz, Jr., Stroudsburg, for appellees.

Before SPAETH, BROSKY and HOFFMAN, JJ.

SPAETH, Judge:

This is an appeal from a final decree in equity. Appellees, Charles W. and Annelisie E. Ecenbarger, sought by their complaint an order enjoining Ross R. Lesoine, Jr., and his mother, Mildred A. Lesoine, from using a certain road, and

requiring them to destroy the road, restore the surface, and pay damages. In the answer to the complaint it was admitted that Ross R. Lesoine, Jr., had constructed the road where appellees alleged he had, but it was claimed that he had the authority to do so because a thirty-three foot easement existed along the entire length of the line dividing his property from appellees' property. The Chancellor entered a decree nisi dismissing the action against Mildred A. Lesoine and denying appellees' claim for monetary damages, but ordering Ross R. Lesoine, Jr., to remove the portion of the road in question and to restore appellees' property to the condition in which it had been before that portion was built. Ross R. Lesoine, Jr., filed exceptions. On June 12, 1980, the lower court, sitting en banc, dismissed the exceptions and made the decree nisi a final decree. On appeal, Ross R. Lesoine, Jr., argues that the lower court erred in not finding that he had an easement by implication. We affirm.

Ethel G. Lesoine, the parties' common grantor, owned a large tract of land in Price Township, Monroe County. She granted, by a deed dated September 6, 1960, an easement to Harry S. Fox and Pardee Place "as and for a passageway." A road built on this easement ran north to south, turning slightly to the west at its southern extremity. It may be illustrated as follows:

On January 9, 1963, Ethel G. Lesoine divided her tract of land into eastern and western segments and conveyed the

segments to her two sons, John F. Lesoine and Ross R. Lesoine, Sr., and their respective wives, Minnie L. and Mildred A. Lesoine, as tenants in common. The western segment consisted of approximately seven acres, the eastern of approximately twelve acres.

The deed conveying the western segment excepted from the conveyance the road previously granted to Harry S. Fox and Pardee Place. It read:

> EXCEPTING also the roadway, 33 feet wide, along the easterly line of the remaining tract above, which roadway was granted by Ethel G. Lesoine to Harry S. Fox and Pardee Place by grant dated September 20, 1960, and recorded in the aforesaid office in Deed Book Vol. 272, page 221.[1]

R. 134a.

Thus, by referring to the grant to Harry S. Fox and Pardee Place, the road was described as pictured above—turning to the west at its southern extremity. However, the deed conveying the eastern segment described the western boundary of that segment as follows:

> . . . to an old stone corner; thence along other land of Ethel Lesoine, grantor hereof, *and along* the East side of a 33 feet wide *road*, which shall be for the use of the grantor and grantees hereof, their heirs and assigns . . . .

R. 133a (emphasis added).

This description resulted in an inconsistency. The calls, courses and distances in the deed conveying the eastern segment divide the property by a straight north-south line. For the most part, this line runs along the eastern edge of the road built by Harry S. Fox and Pardee Place. However, it does not turn as the road turns west, but continues straight to the "old stone corner." It may be illustrated as follows:

1. Although this deed refers to a "grant dated September 20, 1960," our review of the record discloses that in fact the deed by which Ethel G. Lesoine granted Harry S. Fox and Pardee Place a road was dated September 6, 1960. *See* R. 116a.

Thus, while the deed conveying the eastern segment stated that its western boundary ran "along the East side of a 33 feet wide road . . .", the road itself did *not* run entirely along that boundary, but instead turned to the west at its southern extremity.

On December 17, 1971, John F. and Minnie L. Lesoine and Mildred A. Lesoine, by then widow of Ross R. Lesoine, Sr., exchanged their interests in the two segments so that their holdings in common were divided: Mildred conveyed to John and Minnie her interest in the western segment; and John and Minnie conveyed to Mildred their interest in the eastern segment. Mildred thus acquired full title to the eastern segment, and John and Minnie, full title to the western segment. In this exchange, the inconsistency just noted was repeated. The deed conveying Mildred's interest in the western segment excepted only the existing roadway for an easement of passage. It stated:

> EXCEPTING also the *roadway*, 33 feet wide, along the easterly line of the remaining tract above, which roadway was granted by Ethel G. Lesoine to Harry S. Fox and Pardee Place by grant dated September 20, 1960.

R. 114a (emphasis added).

The deed conveying John's and Minnie's interest in the eastern segment, however, stated in its description:

> ... *to an old stone corner;* thence North 13 degrees 39 minutes East, *along the East line of a 33 feet wide right-of-way,* which right-of-way shall be for the use of the Grantor and Grantee hereof, their Heirs and Assigns
>
> . . . .

R. 115a (emphasis added).

Thus, the deed conveying Mildred's interest in the western segment to John and Minnie described a right-of-way that looked like this:

However, the deed conveying John's and Minnie's interest in the eastern segment to Mildred described a right-of-way that looked like this:

On August 23, 1972, John F. and Minnie L. Lesoine conveyed their entire interest in the western segment to Alta Janosko. That deed excepted the road by describing it as turning to the west at its southern extremity. Janosko subdivided the western segment and conveyed a lot, approximately one acre in size, to Charles W. and Annelisie E. Ecenbarger, who are the appellees here. It was later discovered that the deed had calls reversed 180 degrees in the north-south direction. The property was then re-conveyed to Janosko and back again to the Ecenbargers. The corrected deed, in addition to changing the calls, added the phrase "in part":

.... thence from the point of beginning along lands of Mildred A. Lesoine and, *in part*, along the eastern edge of the thirty-three foot right-of-way ....

R. 124a (emphasis added).

On June 5, 1975, Mildred A. Lesoine conveyed to her son, Ross R. Lesoine, Jr., who is the appellant here, a portion of the eastern segment. In pertinent part the deed stated:

BEGINNING *at a point on the easterly line of a thirty-three (33') foot wide road,* which point is also the corner of Lot 25 .... thence along Lots 27 and 25 North 20 degrees West 177 feet *to a point on the easterly side of the aforesaid thirty-three (33') foot wide road;* thence along

Lot 25 *and also along aforesaid thirty-three (33') foot wide road* North 13 degrees 39 minutes East 83 feet to the place of BEGINNING.

. . . . .

BEING part of the premises which John F. Lesoine and Minnie L. Lesoine, his wife, by Deed dated December 17, 1971, and recorded in the Office for the Recording of Deeds, &c., in and for Monroe County . . . in Deed Book Vol. 412, page 1081, granted and conveyed unto Mildred A. Lesoine, widow, Grantor hereof, in fee.

TOGETHER with the full right, liberty, and use of a certain thirty-three (33') foot wide *right-of-way referred to in the third course and distance recited in a Deed from John F. Lesoine and Minnie L. Lesoine, his wife, to Mildred A. Lesoine, widow, dated December 17, 1971, and recorded* . . . in Deed Book Vol. 412, page 1081, said right-of-way being for the common use of the Grantor and Grantee herein, and their heirs, successors and assigns. R. 128a (emphasis added).

By this reference to "the third course and distance in a Deed from John F. Lesoine and Minnie L. Lesoine, his wife, to Mildred A. Lesoine" the road was described not as turning to the west at its southern extremity but as proceeding straight to the old stone corner.

The controversy between the parties may thus be summarized as follows: Appellees, the Ecenbargers, own a triangular property, with a straight north-south eastern boundary, and with a road running along most of the boundary but angling to the west across the southern corner of the property. Appellant, Ross R. Lesoine, Jr., owns a property on the other—eastern—side of the Ecenbarger property. He claims, however, that he has an easement along the *entire* boundary. Thus:

Appellant claims his easement by implication of law. He contends that this implication arises because the deed conveying John F. and Minnie L. Lesoine's interest in the eastern segment described a right-of-way for the length of its western boundary, *i.e.*, all the way along the line dividing appellant's property from appellees', down to the old stone corner. Brief for Appellant at 18, 22–30. Appellant quotes an often-repeated proposition of law:

> Where a street or other way is called for as a boundary in a conveyance of land, and the grantor owns the fee in the land represented as the way or street, he is estopped, as against the grantee to deny that an easement in such way passes to the grantee by implication of law. In such a case, *it is immaterial that the way to which reference is made does not exist as such at the time of the transfer.* *Justin J. Powell, Inc. v. Wian*, 456 Pa. 35, 42, 318 A.2d 346, 350 (1974) *quoting* 25 Am.Jur.2d Easements and Licenses § 25 (1966).

*See also, Jones v. Sedwick*, 383 Pa. 120, 117 A.2d 709 (1955); *Philadelphia Storage Battery Co. v. Philadelphia*, 323 Pa. 17, 186 A. 103 (1936); 25 Am.Jur.2d Easements and Licenses § 25, 46 A.L.R.2d 461.

The fallacy in appellant's argument is that it overlooks the requirement stated in the words, "and the grantor owns the fee." One cannot grant an easement in property one does not own. *See Kelly v. Phillips*, 13 Del.Ch. 261, 118 A. 230 (1922); *Wimpey v. Smart*, 137 Ga. 325, 73 S.E. 586

(1912); *Cole v. Hadley*, 162 Mass. 579, 39 N.E. 279 (1895); *Brainard v. Boston & N.Y.C.R. Co.*, 78 Mass. (12 Gray) 407 (1859); *See also* 25 Am.Jur.2d Easements and Licenses § 25, 46 A.L.R.2d 461, 474 [c]. Here, the grantors, John F. and Minnie L. Lesoine, did not own the fee; they were, when they made the conveyance on which appellant relies, tenants in common with Mildred A. Lesoine. When property is thus jointly owned, *all* of the co-owners must join in the deed before an easement on their jointly owned property will arise, for "one tenant in common alone cannot create an easement which can be enforced against his co-owners." Ladner, Conveyancing in Pennsylvania § 11.02(a). As the Chancellor noted, the record is devoid of any evidence suggesting that Mildred A. Lesoine conveyed her interest in the western segment to John F. and Minnie L. Lesoine, *before* they conveyed their interest in the eastern segment to her. Appellant's claimed theory of an implied easement must therefore fail.

■ Neither may it be maintained that appellant otherwise acquired an easement by implication. In *Thomas v. Deliere*, 241 Pa.Super 1, 359 A.2d 398 (1976), we stated:

> When an easement is not expressed and is sought to be attached to the grant of a fee, the implication must clearly arise from the intention of the parties as shown by the terms of the grant, the surroundings of the property and the other res gestae of the transaction. *Lerner v. Poulos*, 412 Pa. 388, 194 A.2d 874 (1963); *Schwoyer v. Smith*, 388 Pa. 637, 131 A.2d 385 (1957); *Spaeder v. Tabak*, 170 Pa.Super. 392, 85 A.2d 654 (1952); *Walker v. Walker*, 153 Pa.Super. 20, 33 A.2d 455 (1943). See also Restatement, Property, § 474. In determining whether the circumstances under which a conveyance of land is made create an implied easement, § 476 of the Restatement suggests that the following factors are important: "(a) whether the claimant is the conveyor or the conveyee, (b) the terms of the conveyance, (c) the consideration given for it, (d) whether the claim is made against a simultaneous convey-

ee, (e) the extent of the necessity to the claimant, (f) whether reciprocal benefits result to the conveyor and the conveyee, (g) the manner in which the land was used prior to its conveyance, and (h) the extent to which the manner of prior use was or might have been known to the parties."

*Id.,* 241 Pa.Super. at 4, 359 A.2d at 399.

The "res gestae" of this transaction include a recognition that two deeds were "swapped." In such circumstances, we think an old rule of interpretation useful.

It is well settled that when several instruments in pari materia are executed by the same parties at or about the same time, they are to be treated as one transaction ... "and we cannot separate what the parties have joined and look for their understanding and intentions in [just] one [of their] instruments ...."

*Nichols v. Nichols,* 149 Pa. 172, 175, 24 A. 194 (1892) *quoting Cummings v. Antes,* 19 Pa. 287 (1852).

Applying this rule, and looking at both deeds, we find the inconsistency that we have sought to illustrate by the foregoing diagrams: The deed conveying John F. and Minnie A. Lesoine's interest in the eastern segment purports to grant a right-of-way along the entire boundary of the western segment, while the deed conveying Mildred A. Lesoine's interest in the western segment fails to mention even the existence of such an easement. The inference is almost inescapable that the purported right-of-way arose from a conveyancing error—a natural, if regrettable, one, considering that for most of its length, the road did run along the boundary between the two properties. Appellant has not alleged, nor does the record suggest, any need for the easement he claims, so far as the beneficial enjoyment of appellant's land is concerned. *See Thomas v. Deliere, supra,* 241 Pa.Super. at 5 n. 2, 359 A.2d at 400 n. 2; *DePietro v. Triano,* 167 Pa.Super. 29, 74 A.2d 710 (1950). Indeed, the land had not been used as a road until appellant, over the protests of

appellees, built his road, more than four years after the time of the alleged creation of the easement.[2]

Affirmed.

HOFFMAN, J., concurs in the result.

**2.** Appellant has also argued that appellees should be estopped from denying appellant's claim of an easement because an unrecorded map showed a road plotted on appellant's claimed right-of-way. The map, however, was not recorded, and is marked on its face, "Void— Do Not Use." It thus neither provided notice to appellees, nor, if found, should it have been relied on.

Appellant also argues that the Chancellor erred in admitting John F. Lesoine's oral testimony into evidence to demonstrate his lack of intent to create an easement. Since we have concluded on the basis of the documentary evidence alone that no easement was created, we need not consider this argument. A correct decision will be sustained even if the reason given by the court below to sustain its decision is erroneous. *Justin J. Powell, Inc. v. Wian, supra,* 456 Pa. at 40 n. 3, 318 A.2d at 349 n.3; *City L.O.H., Inc. v. Hotel, M. & C.E. Union,* 413 Pa. 420, 197 A.2d 614 (1964).