In re: Appeal of MAOYING YU from the Delaware County Board of Assessment and Revision of Taxes Folio # 14–00–01186–00 Municipality: Darby Borough Address: 110 N. Front Street Assessment For The Year Beginning January 1, 2013 Property of: Maoying Yu.

Appeal of: William Penn School District.

Commonwealth Court of Pennsylvania.

Argued June 17, 2015.
Decided July 21, 2015.

Joseph J. McAlee, New Britain, for appellant.

Kevin J. McGarrey, Lester, for appellee Maoying Yu.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and P. KEVIN BROBSON, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge P. KEVIN BROBSON.

Maoying Yu (Taxpayer) initiated this matter by filing a Petition for Review of Assessment (Petition for Review) with the Court of Common Pleas of Delaware County (trial court). Taxpayer's Petition for Review challenged the denial of her tax assessment appeal for tax year 2013 by the Delaware County Board of Assessment Appeals (Board). After Taxpayer filed her Petition for Review, the Board issued a revised tax assessment, reducing the assessed value of Taxpayer's property (Property). In response, Taxpayer unilaterally discontinued her appeal of the original tax assessment by filing a Praecipe to With-

draw Appeal (Praecipe to Withdraw). Thereafter, William Penn School District (School District) filed a Petition to Strike Praecipe to Withdraw Appeal (Petition to Strike), which the trial court denied by order dated April 8, 2014. On appeal, the School District argues that: (1) the trial court erred by denying its Petition to Strike and not striking Taxpayer's discontinuance of her original tax assessment appeal; and (2) the trial court erred in refusing to void the revised assessment for Taxpayer's Property and reinstate the original assessment for her Property.[1] We now reverse.

■ Taxpayer's Property, located at 110 N. Front Street in Darby Borough, Pennsylvania, was initially assessed at $45,070 for the year beginning January 1, 2013. Following Taxpayer's appeal of her assessment to the Board, the Board denied her appeal on November 15, 2012, thereby maintaining the Property's assessment at $45,070 (Initial Decision). (Reproduced Record (R.R.) at 29a.) Taxpayer, thereafter, filed her Petition for Review of the Board's Initial Decision with the trial court on December 17, 2012,[2] and the School

District timely intervened on January 9, 2013. (Trial Ct. Op. at 2.)

On December 18, 2012, however, after Taxpayer had already filed her Petition for Review with the trial court, the Board issued a revision to its Initial Decision (Revised Decision). (R.R. at 34a.) Using strikethroughs and interlineations, the Board's Revised Decision, dated December 18, 2012, purported to reduce Taxpayer's assessment for 2013 to $21,600. There is no explanation in the record or the parties' briefs as to why the Board issued its Revised Decision. Thereafter, on April 2, 2013, Taxpayer filed with the trial court's Office of Judicial Support, a Praecipe to Withdraw Appeal, indicating that the matter has been "Settled, Discontinued, and Ended." (R.R. at 15a.)

The School District filed its Petition to Strike on July 5, 2013. (R.R. at 18a.) Therein, the School District asserted that this case was discussed at the trial court's Call of the List held on March 22, 2013. The School District alleged that "[a]t the Call of the List, ... Taxpayer's [c]ounsel stated that in view of the 'revised'" tax assessment, the Petition for Review would be withdrawn. (R.R. at 19a.) Moreover,

---

1. This matter was argued seriately with: (1) *In Re: Appeal of Maoying Yu From the Delaware County Board of Assessment and Revision of Taxes Folio # 14–00–01985–00*, 2015 WL 5456320 (Pa.Cmwlth., No. 813 C.D.2014, filed July 21, 2015); (2) *In Re: Appeal of Maoying Yu From the Delaware County Board of Assessment and Revision of Taxes Folio # 14–00–03785–00*, 2015 WL 5510925 (Pa. Cmwlth., No. 814 C.D.2014, filed July 21, 2015); (3) *In Re: Appeal of Jeffrey M. Krane From the Delaware County Board of Assessment and Revision of Taxes Folio # 14–00–00036–00*, 2015 WL 5456315 (Pa.Cmwlth., No. 815 C.D.2014, filed July 21, 2015); (4) *In Re: Appeal of Marvin Krane From the Delaware County Board of Assessment and Revision of Taxes Folio # 14–00–00518–00*, 2015 WL 5504527 (Pa.Cmwlth., No. 816 C.D.2014, filed July 21, 2015); (5) *In Re: Appeal of Jeffrey M. Krane From the Delaware County*

Board of Assessment and Revision of Taxes Folio # 14–00–02005–00, 2015 WL 5456289 (Pa. Cmwlth., No. 817 C.D.2014, filed July 21, 2015); and (6) *In Re: Appeal of Jeffrey M. and Marvin Krane From the Delaware County Board of Assessment and Revision of Taxes Folio # 14–00–01185–00*, 2015 WL 5503489 (Pa. Cmwlth., No. 818 C.D.2014, filed July 21, 2015).

2. In order to appeal the Initial Decision, Taxpayer was required to file an appeal from the decision within 30 days; however, because the last day to appeal, which was December 15, 2012, fell on a Saturday, Taxpayer had until Monday, December 17, 2012, to file an appeal with the trial court. *See* Section 1908 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1908 (providing that whenever last day of appeal period falls on Saturday, Sunday or legal holiday, "such day shall be omitted from the computation").

as alleged in the Petition to Strike, the School District's Solicitor advised Taxpayer's counsel that the School District would not consent to the withdrawal, because the Revised Decision of the Board was void ab initio and the Board lost jurisdiction to take additional action after Taxpayer filed her Petition for Review.

The School District further alleged that Taxpayer withdrew her Petition for Review without seeking leave of the trial court or the School District's consent and without providing notice to the School District that she would discontinue her appeal. The School District averred that, because it believed the tax assessment appeal was still pending, it retained an expert to prepare an appraisal of the Property. The expert examined the Property on April 6, 2013, and released an appraisal report on April 14, 2013. (R.R. at 20a, 38a–48a.) The School District also alleged that it first learned that Taxpayer withdrew her appeal on June 19, 2013, after its counsel reviewed the docket. The School District asserted that Taxpayer has never advised it that the appeal was withdrawn, even though the School District provided Taxpayer with a copy of its appraisal report.

On April 8, 2014, without hearing or oral argument, the trial court issued an order, denying the School District's Petition to Strike (April 8th Order). The School District filed a notice of appeal on May 8, 2014. After the School District filed a statement of errors complained of on appeal, the trial court issued an opinion in support of its April 8th Order. In its opinion, the trial court indicated that it denied the School District's Petition to Strike, because the School District failed to appeal the Board's Revised Decision: "Once the December 18, 2012 determination was entered, it was incumbent upon the School District or other taxing authorities to perfect an appeal. They failed to do so." (Trial Ct. Op. at 3.) Because the School District failed to appeal, the trial court reasoned that it would be "inequitable to force Taxpayer to litigate a determination with which she was apparently satisfied"—i.e., the Revised Decision. (Id. at 4.)

 On appeal to this Court,[3] the School District raises two principal arguments. First, the School District contends that the trial court failed to evaluate properly the prejudice to the School District caused by Taxpayer's withdrawal and the trial court's subsequent refusal to strike off the discontinuance.[4] Specifically, the

---

**3.** "Our review in tax assessment matters is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a conclusion not supported by substantial evidence." *Herzog v. McKean Cnty. Bd. of Assessment Appeals,* 14 A.3d 193, 199 n. 15 (Pa.Cmwlth.2011). In reviewing a trial court's decision to deny a petition to strike a discontinuance, the standard of review is abuse of discretion. *Fancsali ex rel. Fancsali v. Univ. Health Cntr. of Pittsburgh,* 563 Pa. 439, 761 A.2d 1159, 1162 (2000). An abuse of discretion occurs where (a) "the law is overridden or misapplied," or (b) "the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. McAleer,* 561 Pa. 129, 748 A.2d 670, 673 (2000).

**4.** Under Pennsylvania Rule of Civil Procedure No. 229(c) "[t]he court, upon petition and after notice, may strike off a discontinuance in order to protect the rights of any party from unreasonable inconvenience, vexation, harassment, expense, or prejudice." "In determining whether to strike a discontinuance, 'the trial court must consider all facts and weigh equities. Further, the trial court must consider the benefits or injuries which may result to the respective sides if a discontinuance is granted.'" *Pohl v. NGK Metals Corp.,* 936 A.2d 43, 47 (Pa.Super.2007) (quoting *Foti v. Askinas,* 432 Pa.Super. 604, 639 A.2d 807, 808 (1994)), *appeal denied,* 597 Pa. 733, 952 A.2d 678 (2008). Although the Pennsylvania Rules of Civil Procedure are inapplicable in tax assessment appeals, in the sense that they

School District notes that Taxpayer withdrew her appeal without leave of court and without the consent of the School District. Moreover, the School District did not receive timely notice of the discontinuance. The School District incurred costs and fees preparing for the appeal, most of which accrued after Taxpayer filed her Praecipe to Withdraw and before the School District had notice of that withdrawal. The School District also accuses the trial court of condoning Taxpayer's "forum shopping." Second, the School District contends that the Revised Decision was not authorized under the Consolidated County Assessment Law (Assessment Law), 53 Pa.C.S. §§ 8801–8868. As an unauthorized act by the Board, the Revised Decision cannot serve as a basis for the trial court's refusal to strike the discontinuance in this case. The trial court's order, therefore, must be reversed and the matter remanded with direction to the trial court to set the assessed value for the Property.

For her part, the Taxpayer defends the trial court's decision. She maintains that once the Board issued the Revised Decision, her appeal of the Initial Decision became moot. The burden then shifted to the taxing authorities, including the School District, to challenge the Revised Decision. They failed to do so. With respect to the legality of the Revised Decision, Taxpayer argues that there is nothing in the Assessment Law that prohibits the Board from revising its decisions. Taxpayer also cites specifically to Section 8844(f) of the Assessment Law, contending that the intent of the Assessment Law was to provide the Board "wide latitude in issuing and amending Hearing Result notices when circumstances arise." (Taxpayer's Br. at 13.)

The Assessment Law authorizes counties to establish a board of assessment appeals, with enumerated powers and duties. 53 Pa.C.S. § 8851(a)–(b). Under the Assessment Law, a county's assessment office is charged with the initial duty of assessing property values and preparing and submitting to the county's board of assessment appeals annually an assessment roll of the properties subject to and exempt from local taxation. *Id.* §§ 8841–8842. Taxpayers may challenge the county assessment office's determinations by lodging an appeal with the board of assessment appeals. *Id.* § 8844. The board of assessment appeals is empowered, *inter alia,* to "[h]ear and determine appeals, as provided in section 8844." *Id.* § 8851(b). Section 8844(e) of the Assessment Law requires the board of assessment appeals to issue its decisions "no later than November 15." The county assessment office thereafter is required to "make the appropriate changes in the assessment roll to

---

cannot be mandatorily imposed on the trial court or the parties, trial courts are vested with full authority to regulate the practice and procedure before them when a void exists. *In re Appeal of the Borough of Churchill,* 525 Pa. 80, 575 A.2d 550, 554 (1990). Here, the Consolidated County Assessment Law (Assessment Law), 53 Pa.C.S. §§ 8801–8868, is silent on the procedure to be used by a party who seeks to discontinue voluntarily a tax assessment appeal. In this case, Taxpayer filed a praecipe with the trial court to withdraw her appeal, without notice to the School District. When the School District filed its Petition to Strike, the trial court, exercising its discretion in the absence of any controlling procedure in the Assessment Law or in governing rule of procedure, accepted and considered the merits of the filing, looking to precedent applying Rule 229(c) of the Pennsylvania Rules of Civil Procedure to fill the void. (Trial Ct. Op. at 3 (citing *Pohl,* 936 A.2d at 47).) This was an appropriate exercise of the trial court's discretion, and, under *Borough of Churchill,* it would be error for this Court to usurp the trial court's decision in this regard, especially where no party has raised any objection to the trial court proceeding in this fashion.

conform to the decision of the board." *Id.* § 8844(e).

Appeals from decisions of a board of assessment appeals to the trial court are authorized under Section 8854 of the Assessment Law. Appeals must be filed within thirty days of the board's decision. *Id.* § 8854(a)(1); 42 Pa.C.S. § 5571(b). ***Time is of the essence in the Assessment Law:*** "All dates specified in this chapter for the performance of any acts or duties shall be construed to be mandatory and not discretionary with the officials or other persons who are designated by this chapter to perform such acts or duties." 53 Pa.C.S. § 8804(a). Once an appeal is filed, the court of common pleas must determine the market value of the subject property as of the date of the appeal to the board of assessment appeals and the applicable common level ratio. *Id.* § 8854(a)(2).

▉ As a creature of statute, a board of assessment appeals may only exercise those powers expressly conferred upon it by law or by necessary implication to effect those express powers. *See Pa. Div., Horsemen's Benevolent & Protective Ass'n, Inc. v. Mountainview Thoroughbred Racing Ass'n, Inc.,* 855 A.2d 957, 961 (Pa. Cmwlth.2004). We see nothing in the Assessment Law that expressly authorizes

the Board, once it issues its decision in an appeal, to revisit and revise that decision after the November 15th deadline. This is particularly true where an appeal from the Board's assessment decision is already pending before the court of common pleas. In this situation, the Assessment Law expressly and clearly vests in the common pleas court, not the Board, the power and duty to assess the value of the property at issue. So long as an appeal is pending, the Board lacks authority to further consider the matter.[5] Allowing boards to mull over their decisions after an appeal is lodged with the common pleas court and to revise these decisions as they see fit is contrary to the express language of the Assessment Law and could lead to inconsistent decisions and never-ending appeals.[6]

▉ Taxpayer relies on Section 8844(f)(2) of the Assessment Law as conferring some authority to the Board to revise its appeal decisions after the statutory deadline of November 15th. Subsection (f) relates to the requirement imposed on the county assessment office in subsection (e) to "make the appropriate changes in the assessment roll to conform to the decision of the board." 53 Pa. C.S. § 8844(e)(2). The related language in subsection (f) provides:

---

5. This Court has even held that the Assessment Law precludes a trial court from remanding a real estate appeal to the board of assessment appeals. *See Chartiers Valley Sch. Dist. v. Bd. of Prop. Assessment, Appeals & Review,* 154 Pa.Cmwlth. 81, 622 A.2d 420, 428 (1993) (en banc) ("We hold today that when a real estate appeal is before the court of common pleas, the court cannot remand to the board."). This holding bolsters the notion, adopted above, that the Board may not act further to adjudicate an assessment appeal once that the Board's initial assessment appeal determination is before the trial court for *de novo* review. A remand would be necessary, but under *Chartiers Valley* it is not available.

6. Such an interpretation is consistent with this Court's case law concerning the revision of initial determinations of the Department of Labor and Industry (L & I) under the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914. In *Garza v. Unemployment Compensation Board of Review,* 669 A.2d 445 (Pa.Cmwlth.1995), *appeal denied,* 544 Pa. 637, 675 A.2d 1253 (1996), we held that L & I may issue a revised unemployment compensation determination before an initial determination is appealed, but it may not do so after an appeal is filed with the Unemployment Compensation Review Board.

(1) The county assessment office shall prepare three copies of the assessment roll and shall deliver as follows the copies on or before November 15 with its certificate that each copy is a true copy of the original assessment roll:

. . . .

(2) All copies of the roll so furnished shall for all purposes be considered as originals. The original assessment roll and the true copies may be corrected, amended or changed after November 15 as circumstances may require.

*Id.* § 8844(f)(1)–(2). Under the Assessment Law, the county assessment office creates and maintains the county assessment roll. The above-quoted language provides the authority to the county assessment office to make changes to the assessment roll "as circumstances may require." We are not faced here, however, with a situation where the county assessment office made changes to the county assessment roll. Here, the Board,[7] not the

---

7. The board of assessment appeals and the county assessment office are separately-defined in the Assessment Law. The board is "[t]he board of assessment appeals or the board of assessment revision established in accordance with section 8851 (relating to board of assessment appeals and board of assessment revision). The term, when used in conjunction with hearing and determining appeals from assessments, shall include an auxiliary appeal board." 53 Pa.C.S. § 8802. The county assessment office is "[t]he division of county government responsible for preparing and maintaining the assessment rolls, the uniform parcel identifier systems, tax maps and other administrative duties relating to the assessment of real property in accordance with this chapter." *Id.* The county assessment office structure is set forth in Subchapter C of the Assessment Law, *id.* §§ 8831–8834, and its duties are set forth in Subchapter D of the Assessment Law, *id.* §§ 8841–8848. Though separate bodies under the Assessment Law, the board and the assessment office certainly interact. For example, while it is the assessment office's obligation to maintain the county assessment roll, *id.* § 8841(a), the board of assessment appeals determines the form of the roll that the assessment office must use, *id.* § 8841(b). Also, the board of assessment appeals plays an "advice" roll with respect to the county commissioner's appointment of the county's chief assessor. *Id.* § 8831(a). In several portions of the Assessment Law, the county assessment office and its assessors are provided the authority to assess and change, even on an interim basis, the assessment of a property. Section 8816 of the Assessment Law authorizes *the county assessment office,* but not the board of assessment appeals, to correct mathematical and clerical errors. Section 8817 of the

Assessment Law authorizes *the assessors* (a reference to the chief assessor and subordinate assessors that are part of the county assessment office), but not the board of assessment appeals, to change the assessed value of a property when subdivided or altered by the addition or removal of improvements. As noted above, Section 8841 of the Assessment Law relates to the maintenance of the county assessment roll by the county assessment office. That section expressly empowers *the assessment office* to change the assessment roll to account for interim revisions of the type provided in Section 8817 of the Assessment Law. *Id.* § 8841(c). The board of assessment appeals is also referenced in Section 8841, but only with respect to the power to prescribe the form of assessment roll used by the county assessment office. *Id.* § 8841(b). The powers of the board of assessment appeals, by contrast, are set forth clearly and expressly in Subchapter E of the Assessment Law, more specifically Section 8851(b) of the Assessment Law, which provides:

> (b) **Powers and duties of board.**—The board has the following powers and duties:
> (1) Appoint, with the approval of the county commissioners, clerks, engineers and other employees as necessary.
> (2) Promulgate regulations as provided in section 8852 (relating to regulations of board).
> (3) Hear and determine appeals, as provided in section 8844 (relating to notices, appeals and certification of values).
> (4) Establish the form of the assessment roll as provided in section 8841 (relating to assessment roll and interim revisions).
> (5) Prepare annually and submit to the county commissioners an estimate of the

county assessment office, purported to issue a revised assessment appeal determination after the November 15th statutory deadline and while an appeal from its Initial Decision was pending before the trial court. Because Section 8844(f) confers no power on the Board to do so, Taxpayer's reliance on this portion of the Assessment Law is misplaced.

■ Nor do we find that the Board has the power by necessary implication to revisit its determinations. In the event of an error by the Board, the Assessment Law provides the express remedy of an appeal to the common pleas court. The trial court hears appeals under the Assessment Law *de novo*. *Green v. Schuylkill Cnty. Bd. of Assessment Appeals*, 565 Pa. 185, 772 A.2d 419, 425–26 (2001). Accordingly, there is no implicit need to confer on the Board the power issued a revised decision with respect to a particular appeal after the November 15th statutory deadline and after an appeal of its initial decision is pending before the court of common pleas. To the extent the Board feels that it erred in its assessment decision, it can convey its position to the judge of the common pleas court hearing the appeal.

■ The Board lacked the authority to issue the Revised Decision.[8] As the Revised Decision was not a determination by the Board that triggered a right, let alone the obligation, to appeal under Section 8854(a) of the Assessment Law,[9] the trial

---

expense to be incurred incidental to the carrying out of the provisions of this chapter.

(6) Establish a permanent system of records as required by section 8834 (relating to assessment records system).

Absent from this list is any power similar to the powers conferred on the assessment office to correct, amend, or change county assessment rolls. The General Assembly has only conferred that power, and then under only limited circumstances, to the county assessment office. The above provisions are examples in the Assessment Law of how the General Assembly intended the board and the assessment office to serve different, although cooperative, functions with respect to the scheme of property tax assessment.

8. This opinion does not address the circumstances under which parties to a tax assessment appeal may settle an appeal. There is no contention here that the parties had reached a settlement, and there is certainly no contention that, as a result of a settlement, the Board issued its Revised Decision. Instead, here, the Board, while in the position of a party-litigant in the trial court, unilaterally acted in its adjudicatory capacity by issuing its Revised Determination. Thus, this opinion should not be interpreted as preventing the parties from settling a tax assessment appeal before the court of common pleas. This opinion also should not be construed as precluding a taxpayer from discontinuing a tax assessment appeal, assuming proper notice and opportunity to be heard is afforded to all parties to the appeal. Here, however, no proper notice of the withdrawal was given to the School District. Moreover, in light of our conclusion that the Revised Decision was invalid, allowing Taxpayer's withdrawal to stand would mean that the Property would be assessed at the value set forth in the Board's Initial Decision—*i.e.*, the value that Taxpayer objected to when she filed her appeal with the trial court. As this clearly was not part of Taxpayer's calculus when she attempted to withdraw her appeal, our decision here avoids any prejudice, or as the trial court said "inequity," to the Taxpayer as a result of the confusion created by the Board's unexplained conduct in this matter.

9. There is no question that it would have been prudent for the School District to also appeal the Revised Decision. But whether its failure to do so precludes the School District from challenging the jurisdiction of the Board to issue the Revised Decision is a separate matter. The School District's challenge to the trial court's reliance on the Revised Decision is, in essence, a challenge to the validity of that decision for want of jurisdiction before the Board. With respect to such challenges, the Pennsylvania Supreme Court has consistently held:

[I]t is never too late to attack a judgment or decree for want of jurisdiction. That ques-

court misapplied the Assessment Law and thus abused its discretion in denying the School District's Petition to Strike. The Board's Revised Decision lulled Taxpayer into believing that she had won, and it caused the trial court to deny the School District's request to strike the discontinuance. Reversing the trial court here rights both wrongs and puts the question of the Property's market value back before the trial court, where it belongs under the Assessment Law, without prejudice to either Taxpayer or the School District.[10] We, therefore, reverse the trial court's April 8th Order. We remand the matter to the trial court with instruction that the trial court strike Taxpayer's discontinuance of her appeal and proceed to determine the market value of the Property in accordance with the Assessment Law.

### ORDER

NOW, this 21st day of July, 2015, the order of the Court of Common Pleas of Delaware County, entered in the above-captioned matter, is hereby REVERSED, and the matter is REMANDED for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

DISSENTING OPINION BY President Judge DAN PELLEGRINI.

This is a simple case made complicated by the conflating of the April 2, 2013 discontinuance of the appeal from the Board's[1] original November 15, 2012 Decision (Original Decision) with the issue of whether the Board had jurisdiction to issue its Revised December 18, 2012 Decision (Revised Decision). Simply put, the only issue before the trial court was whether to strike Taxpayer's discontinuance of her appeal.

There is no rule of court that requires a person to seek permission to discontinue an appeal. However, Rule 229(c) of the Pennsylvania Rules of Civil Procedure permits the trial court to strike a discontinuance for, *inter alia*, unreasonable inconvenience, expense or prejudice. Pa. R.C.P. No. 229(c). It was under this Rule of Civil Procedure that the School District sought to strike the discontinuance.

However, the Pennsylvania Rules of Civil Procedure do not apply to tax assessment appeals. *Appeal of Borough of Churchill*, 525 Pa. 80, 575 A.2d 550 (1990). Because the Rules of Civil Procedure do not apply, the School District cannot seek

---

tion is always open. Such a judgment is entitled to no authority or respect, and is subject to impeachment in collateral proceedings at any time by one whose rights it purports to affect. The want of jurisdiction over the subject matter may be questioned at any time. It may be questioned either in the trial court, before or after judgment, or for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved. . . .

*DeCoatsworth v. Jones*, 536 Pa. 414, 639 A.2d 792, 796 (1994) (alterations in original) (citations omitted) (internal quotation marks omitted) (quoting *DeCoatsworth v. Jones*, 414 Pa.Super. 589, 607 A.2d 1094 (1992)). Thus, although the School District did not appeal the Revised Decision, it was not barred from collaterally attacking the jurisdictional validi-

ty of that decision before the trial court in its Petition to Strike.

**10.** Because of our disposition above, we will not address the School District's other argument, relating to the equities of the trial court's decision.

**1.** Delaware County is a home rule county. Section 420 of its Home Rule Charter establishes the Board of Tax Assessment Appeals which shall perform the function of hearing and adjudicating taxpayer appeals from County real property tax assessments. Section 418 of its Charter provides that the County Treasurer shall be responsible for real property tax assessments. *See, Board of Property Assessment, Appeals and Review of Allegheny County v. County of Allegheny*, 773 A.2d 816 (Pa.Cmwlth.2001).

to strike dismissal of the appeal under Pa. R.C.P. No. 229(c) because it is inapplicable and the general rule that permission is not needed to withdraw applies.

Moreover, the collateral effect of the discontinuance of the appeal of the Original Decision on the Taxpayer is irrelevant to her absolute right to discontinue her appeal of the original assessment or any other assessment that may be before the Board.[2]

Accordingly, because I would affirm the decision of the trial court, *albeit* on different grounds, I respectfully dissent.

Judges BONNIE BRIGANCE LEADBETTER and PATRICIA A. McCULLOUGH join in this dissenting opinion.

**2.** In footnote 4, the majority, agreeing that Rules of Civil Procedure do not apply, posits that *Churchill* allows the trial court to exercise its discretion and use the factors in Pa. R.C.P. 229(c) to determine whether Taxpayer should be allowed to discontinue her appeal.

What this ignores is that it was not the trial court but the School District that requested the trial court to adopt Pa.R.C.P. 229(c) factors to determine whether a taxpayer can discontinue a tax assessment appeal. As the majority states, one of the School District's primary arguments on appeal is that "the trial court failed to evaluate properly the prejudice caused by Taxpayer's withdrawal and the trial court's subsequent refusal to strike off the discontinuance." Opinion at page 579. As was within its discretion, the trial court rejected those standards and permitted her to withdraw her appeal of the assessment that was the subject of the appeal.

If the majority finds that the trial court somehow found that those standards were applicable or that it was somehow an abuse of discretion not to apply a Rule that it agrees does not apply, then, at the very least, the majority should have remanded the matter to the trial court to make that analysis as the School District requested, instead of just to striking the discontinuance of her appeal.