IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: City of Pittsburgh Treasurer's : 
Sale of Properties for Delinquent : 
Taxes – October 25, 2013 : 
  : 
Henrieta Pisztora, Mary Alice Sturm : 
and Stephen W. Sturm, husband and : 
wife, Gregory J. Walsh and Marianne : 
B. Walsh : 
  : 
             v. : 
  : 
City of Pittsburgh and Beth Cronin : 
  : 
Appeal of: Henrieta Pisztora, Mary : 
Alice Sturm, Stephen W. Sturm, : 
Gregory J. Walsh and Marianne B. : No. 897 C.D. 2017
Walsh : Argued: May 8, 2019


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ROBERT SIMPSON, Judge[1]
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: November 1, 2019


        Henrieta Pisztora, Mary Alice Sturm, Stephen W. Sturm, Gregory J.

Walsh, and Marianne B. Walsh (collectively, Appellants) appeal from a June 7, 2017

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge.

order of the Court of Common Pleas of Allegheny County (trial court) dismissing Appellants' case. To the extent the trial court dismissed Appellants' case as untimely, we affirm.

This case involves a treasurer's sale, in which the City of Pittsburgh (City), pursuant to the Second Class City Treasurer's Sale and Collection Act[2] (Treasurer's Sale Act), sold a private street and private alleyway that had been laid out in a plan of lots to Beth Cronin (Cronin) due to unpaid real estate taxes.[3] The facts of this case are largely drawn from the Stipulation of Facts entered into by the parties, except where otherwise indicated. *See* Reproduced Record (R.R.) at 1081a-87a.

## FACTUAL HISTORY

On or about March 24, 1930, husband and wife John J. Coyne and Mary Coyne filed the Coyne Plan of Lots (Coyne Plan) with the City, which subdivided 2.5 acres into 28 lots (Coyne Terrace). Stipulation of Facts ¶ 7, R.R. at 1083a; Coyne Plan, R.R. at 1018a. Coyne Terrace is bisected by a 40-foot-wide private road. Stipulation of Facts ¶ 8, R.R. at 1083a. The private road is marked "private" on the Coyne Plan. *See* Coyne Plan, R.R. at 1018a. The Coyne Plan also includes a 10-foot by 90.53-foot alleyway (Private Alleyway). Stipulation of Facts ¶¶ 9 & 12, R.R. at 1083a-84a. The Coyne Plan shows that the Private Alleyway, which abuts the

---

[2] Act of October 11, 1984, P.L. 876, 53 P.S. §§ 27101-27605.

[3] At some point prior to 1980, the private street and the private alleyway were assigned Allegheny County Block and Lot No. 54-R-92. City's Motion to Dismiss ¶ 5, Reproduced Record (R.R.) at 1287a; Appellants' Brief in Support of Motion for Summary Judgment (MSJ) at 6, R.R. at 1168a. It appears that in November 2008, Allegheny County started assessing the private street and the private alleyway for real estate taxes dating back to 2004. City's Letter of Oct. 31, 2014, R.R. at 1307a; *see* City Dep't Finance Memorandum (Fin. Memorandum), R.R. at 1150a.

2

southeastern part of the private road, was only accessible from the private road. *See* Coyne Plan, R.R. at 1018a.

"On August 11, 1948, City Ordinance 334 opened the section of Coyne Terrace from Lydia Street to a point 97.46 [feet] west of Winterburn Avenue," thereby making this section a public street.[4] Stipulation of Facts ¶ 10, R.R. at 1083a-84a. "The remainder of Coyne Terrace remained a [p]rivate [s]treet." Stipulation of Facts ¶ 11, R.R. at 1084a. The City never accepted the remainder of the private road (which remainder is referred to herein as the Private Street) and the Private Alleyway for public use.[5] Stipulation of Facts ¶ 16, R.R. at 1084a. (The Private Street and the Private Alleyway are sometimes collectively referred to herein as the Subject Property.)

Appellants are owners of lots within the Coyne Plan. Stipulation of Facts ¶ 13, R.R. at 1084a. Appellant Henrieta Pisztora (Pisztora) owns and resides at 4144 Winterburn Avenue. Stipulation of Facts ¶ 1, R.R. at 1082a. Appellants Stephen W. Sturm and Mary Alice Sturm (together, Sturms) own and reside at 4146 Winterburn Avenue. Stipulation of Facts ¶ 2, R.R. at 1083a. Appellants Gregory J. Walsh and Marianne B. Walsh (together, Walshes) own and reside at 542 Coyne Terrace. Stipulation of Facts ¶ 3, R.R. at 1083a. Pisztora's property abuts both the Private Street and the Private Alleyway. Stipulation of Facts ¶ 14, R.R. at 1084a. (Pisztora's parcel apparently is adjacent to the Private Street to the south.) The

---

[4] The record is unclear as to how this portion of the private road became public. *See* City's Brief at 4.

[5] The parties dispute whether the Private Street and the Private Alleyway were ever dedicated for public use. There is nothing in the record that shows that it was formally offered for dedication. The parties disagree over the legal effect of marking a street "private" on a plan of lots that was later recorded and whether such constitutes a dedication. Because of our disposition, we do not reach this issue.

3

properties of the other Appellants "are adjacent to and/or abut the Private Alley[w]ay." Stipulation of Facts ¶ 15, R.R. at 1084a. Cronin owns and resides at 4136 Winterburn Avenue. Stipulation of Facts ¶ 6, R.R. at 1083a. (Cronin's parcel apparently is adjacent to the Private Street to the north.)

On October 25, 2013, pursuant to the Treasurer's Sale Act, the City exposed the entire Subject Property for sale at a treasurer's sale. Stipulation of Facts ¶ 17, R.R. at 1084a. Prior to the sale, the City sent written notice of the treasurer's sale to individuals with the names John Coyne or Mary Coyne.[6] Stipulation of Facts ¶ 18, R.R. at 1084a. The City did not send written notice of the treasurer's sale to

---

[6] Section 203 of the Treasurer's Sale Act sets forth provisions regarding notice of a Treasurer's Sale as follows:

> **(a) System**.--The treasurer shall establish a system of effecting notice to interested parties. The procedure shall be reasonably calculated under the circumstances to apprise the interested parties of the pendency of the sale and to afford parties the opportunity to defend their interests in the property.
>
> **(b) Service**.--Service of written notice made by certified mail is complete when the notice is mailed. If the notice is not delivered or claimed, delivery is refused, the return receipt is not executed or the treasurer fails to receive information from the post office respecting the notice before the date fixed for sale, the validity of the service shall not be impaired and the sale shall proceed at the time fixed by the notice. Information or material received by the treasurer from the post office respecting the notice, whether before or after the sale, shall be included in the treasurer's report filed with the court under section 305.
>
> **(c) Challenge**.--A challenge by an owner to the inclusion of a property in the sale shall be taken by the owner within ten days after service of written notice by filing a verified objection in writing with the treasurer.
>
> **(d) Effect of notice**.--No sale may be set aside and no title to property sold may be invalidated if notice was given under this section.

53 P.S. § 27203. The City admits that owners of record are entitled to notice by mail. *See* City's Brief at 4.

4

Appellants. Stipulation of Facts ¶ 19, R.R. at 1084a. At the treasurer's sale on October 25, 2013, Cronin purchased the Subject Property. *See* Original Record (O.R.) Item 2, Return of Sale at 4.

More than two years later, on or about December 30, 2015, Appellants served a Petition for Rule to Show Cause (Petition) on the City and Cronin seeking to void the treasurer's sale of the Subject Property and to strike the deed the City issued to Cronin. Petition ¶ 26 & Wherefore Clause, R.R. at 1009a-10a; 12/30/15 Trial Court Docket Entry, R.R. at 1395a. Despite the Subject Property being marked "private," Appellants alleged that the Subject Property was laid out on the Coyne Plan to be dedicated for public use, but that the City never accepted the dedication. Petition ¶ 16, R.R. at 1008a. Relying on section 1 of the Act of May 9, 1889, P.L. 173, 36 P.S. § 1961 (Section 1961), Appellants alleged that because the City did not accept the Subject Property for public use within 21 years after it was laid out on the Coyne Plan, Appellants, as abutting landowners, "were and are entitled to take legal title to the center line of the [Private Street and Private Alleyway], which abut their respective properties."[7] Petition ¶¶ 14-19, R.R. at 1008a-09a. Section 102 of the Treasurer's Sale Act defines an interested party as "[a] person who has an interest of record in the property." 53 P.S. § 27102. Appellants claimed that as "interested

---

[7] Section 1961 sets forth a 21-year statute of limitations for a municipality to accept a plotted street or alleyway dedicated for public use. It states:

Any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out.

36 P.S. § 1961.

parties" and legal title owners of the Private Street and/or the Private Alleyway,[8] the City was required to give Appellants notice of the treasurer's sale of the Subject Property by written certified mail. Petition ¶¶ 21-22 & 25, R.R. at 1009a. Appellants alleged that the City failed to provide such notice, and consequently, the treasurer's sale of the Subject Property was void and the deed to Cronin should be stricken. Petition ¶¶ 22, 24 & 26, R.R. at 1009a. Appellants further alleged that due process of law, as guaranteed by the United States and Pennsylvania Constitutions, requires at a minimum that as owners of land, Appellants were entitled to actual notice of the treasurer's sale before they forfeited their interest in the Subject Property and that the City did not take reasonable efforts to effect actual notice. Petition ¶ 23, R.R. at 1009a.

On January 5, 2016, the trial court issued a Rule upon all parties to show cause why the treasurer's sale of the Subject Property on October 25, 2013 should be deemed void and the deed issued to Cronin stricken. 1/5/16 Trial Court Docket Entry, R.R. at 1459a. The City and Cronin each answered and filed New Matter, which the City subsequently amended, R.R. at 1024a-42a, and Appellants filed a Motion for Summary Judgment. R.R. at 1189a-1215a.

On May 12, 2017, the City and Cronin each filed a Motion to Dismiss, seeking dismissal of the case for, among other things, lack of jurisdiction. R.R. at 1281a-92a & 1393a. The City argued that under Section 303 of the Treasurer's Sale Act, 53 P.S. § 27303, Appellants had 30 days from the date of the treasurer's sale to appeal the sale; Appellants failed to do so, so the trial court was without jurisdiction

---

[8] Pisztora claims legal title to the center line of the Private Alleyway and the Private Street, and the other Appellants claim legal title to the center of the Private Alleyway. However, we note that in Appellants' Motion for Summary Judgment filed with the trial court, Pisztora argues she has title to the entirety of the Private Street. MSJ ¶¶ 56-60 & 65, R.R. at 1198a-99a. This inconsistency does not affect our analysis.

6

to hear the appeal. City's Motion to Dismiss ¶¶ 17 & 19, R.R. at 1289a. The City further noted that Appellants failed to avail themselves of an appeal *nunc pro tunc* and asserted that Appellants were not entitled to *nunc pro tunc* relief, as Appellants did not proceed with reasonable diligence in prosecuting their appeal. City's Motion to Dismiss ¶¶ 18-25, R.R. at 1289a-90a. In particular, the City claimed Pisztora knew of the treasurer's sale by at least August 1, 2014, when she retained counsel and sent a letter to Cronin. City's Motion to Dismiss ¶ 22, R.R. at 1290a. The City and Cronin claimed that the other Appellants signed a petition on November 15, 2014, requesting that the City rescind the treasurer's sale of the Subject Property. City's Motion to Dismiss ¶ 23, R.R. at 1290a. Additionally, the City alleged that Appellants Pisztora and Stephen Sturm were interviewed by television reporter Andy Sheehan regarding this matter on July 21, 2015. City's Motion to Dismiss ¶ 24, R.R. at 1290a; *see* Trial Court Opinion at 4 (referring to television station interview). Yet, the City points out that none of Appellants filed an appeal or sought *nunc pro tunc* relief.

In opposition to the Motions to Dismiss, Appellants argued that the time for them to challenge the treasurer's sale had not yet started to run because they were "interested parties" who were never given notice of the treasurer's sale. They asserted that the lack of notice to Appellants, as "interested parties," deprived them of their constitutional right to due process, making the treasurer's sale void *ab initio*. They argued, therefore, that it did not matter if Appellants knew of the treasurer's sale after it had happened and failed to file a timely appeal or move for *nunc pro tunc* relief. Appellants' Response in Opposition to Motions to Dismiss, R.R. at 1333a-38a.

7

On May 17, 2017, the trial court held a final hearing on the merits in the matter. 5/17/17 Transcript, R.R. at 1368a; *see* 12/16/16 Trial Court Order Docket Entry (setting case for trial on 5/17/17), R.R. at 1461a. The trial court began by noting that this was "the time set for a final hearing" and that the parties had filed joint stipulations of fact.[9] R.R. at 1368a. The trial court further stated that it deferred ruling on the Motions to Dismiss, as well as on Appellants' previously filed Motion for Summary Judgment, and that it "offered today as a date for you to be able to call witnesses, additional witnesses over and above the testimony that has been offered through stipulation." R.R. at 1369a. During the hearing, the parties offered exhibits and presented argument. *See* R.R. at 1368a-87a. After Appellants rested, the trial court stated that "[a]ll of the documents that have been offered through the Summary Judgment and Motions to Dismiss and filed of record are made a part. And all of the pleadings that have been filed are made a part of the record." R.R. at 1375a. At the conclusion of the hearing, the trial court stated it would review the documents and issue a decision. R.R. at 1387a. The trial court docket does not contain any orders disposing of the Motion for Summary Judgment or the Motions to Dismiss. *See* R.R. at 1457a-62a.

After the final hearing on the merits, by order and opinion filed June 7, 2017, the trial court dismissed Appellants' case. In its opinion, the trial court concluded that Appellants were not "interested parties" within the meaning of the Treasurer's Sale Act because Appellants failed to prove more than a possible ownership interest in the Subject Property. Trial Court Opinion at 4. The trial court also held that Appellants did not timely appeal the treasurer's sale, which was a jurisdictional defect. *Id.* The trial court noted that the sale occurred on October 25,

---

[9] Appellants filed a pre-trial statement on May 1, 2017, and Cronin filed a pre-trial statement on May 3, 2017. O.R. Items 48 & 50.

2013 and found that Appellants engaged legal counsel by August 1, 2014, signed a petition regarding the sale on November 15, 2014, and were interviewed by a television station about the matter on July 21, 2015; yet, Appellants did not file their Petition until December 2015. *Id.* The trial court stated that there was "no explanation on the record as to why [Appellants] waited more than two years to take any steps to set aside [the] sale[]" and further noted that Appellants had not sought relief *nunc pro tunc*. *Id.* Appellants then appealed to this Court.[10]

### ARGUMENTS

Before addressing Appellants' arguments, we point out that, after the parties filed their briefs and supplemental briefs in the present matter, the Pennsylvania Superior Court decided a case brought against Cronin by other homeowners in the Coyne Plan. *Cunningham v. Cronin*, 206 A.3d 569 (Pa. Super. 2019). Beginning in July 2015, Cronin had blocked those homeowners' access to the Private Alleyway, and the homeowners filed suit, asserting rights in the Private Alleyway via an easement by implication. *Id.* at 571. The Superior Court agreed that the homeowners had an easement by implication in the Private Alleyway and also held that the treasurer's sale did not extinguish the homeowners' easement by implication. *Id.* at 573. That decision was not appealed, and at oral argument in this

---

[10] We note that the trial court did not dispose of the Motion for Summary Judgment and the Motions to Dismiss and held a hearing on the merits. *See supra* p. 8. Therefore, we are not required nor limited to accepting as true the averments in the relevant pleadings. *Cf. Nutrition Mgmt. Servs. Co. v. Hinchcliff*, 926 A.2d 531, 535 (Pa. Super. 2007) (stating that on a motion to dismiss, the evidence must be viewed in the light most favorable to the non-moving party). Our review in tax sale cases is limited to a determination of whether the trial court abused its discretion, rendered a decision which lacked supporting evidence or clearly erred as a matter of law. *777 L.L.P. v. Luzerne Cty. Tax Claim Bureau*, 111 A.3d 292, 296 (Pa. Cmwlth. 2015). "[A] court abuses its discretion when it misapplies the law, exercises its judgment in a manifestly unreasonable manner, or reaches a conclusion as a result of partiality, prejudice, bias or ill will." *In re Private Tax Sale of Premises 214 Plushmill Rd., Nether Providence Twp., Delaware Cty.*, 533 A.2d 1117, 1119 (Pa. Cmwlth. 1987).

matter, the parties agreed that, based on *Cunningham*, Appellants have an easement by implication in the Subject Property and that they retain such easement by implication, as it was not extinguished by the treasurer's sale.

Turning back to the issues before us, Appellants argue that the trial court erred as a matter of law in dismissing their Petition. Appellants raise several issues for our review, including that the trial court erred in failing to recognize that Appellants are, pursuant to the Treasurer's Sale Act, "interested parties" as a matter of law and in failing to hold that the treasurer's sale was void *ab initio* due to the lack of notice to Appellants. Appellants' Brief at 2-3. In particular, Appellants contend that because they are "interested parties" and because the City failed to provide them with proper notice, the sale is void *ab initio*.[11] Appellants' Brief at 14. They argue, therefore, that the 30-day time limitation for filing an appeal of the treasurer's sale never began to run. *Id.* at 9. Appellants request that this Court reverse the trial court's decision, and for the first time on appeal, request that this Court deem their Petition before the trial court as one filed *nunc pro tunc*.[12] *See infra* note 15 and accompanying text. Further, Appellants request that we remand the

---

[11] Appellants also assert, assuming, *arguendo*, that the Coynes were the record owners of the Subject Property, the sale is void *ab initio* due to lack of notice to the Coynes or their heirs, and Appellants seek to challenge the propriety of the notice, or lack thereof, to the Coynes or their heirs. *See* Appellants' Brief at 17-21 & 24-25. However, Appellants lack standing to assert claims on behalf of the Coynes or their heirs. *See Plank v. Monroe Cty. Tax Claim Bureau*, 735 A.2d 178, 182 (Pa. Cmwlth. 1999) (stating, "[o]nly a person who has suffered an injury as a result of the claimed lack of notice may raise it"); *In re Tax Claim Bureau of Lehigh Cty. 1981 Upset Tax Sale Props.*, 507 A.2d 1294, 1297 (Pa. Cmwlth. 1986) (stating that notice to mortgagee was intended for due process protection of that lienholder and failure of such notice does not inure to benefit of owner and vitiate the sale).

[12] This Court may not consider issues on appeal that were not raised before the trial court. Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

10

matter to the trial court with direction to void the treasurer's sale. Appellants' Supplemental Brief at 17.

In response, the City argues, *inter alia*, that this case should be dismissed for lack of jurisdiction because even assuming, *arguendo*, that Appellants were entitled to notice, Appellants did not file a timely appeal and they did not seek to file an appeal *nunc pro tunc* before the trial court.[13] City's Brief at 10-13. Appellants, however, argue that the City should be "estopped from invoking the statute of limitations as a bar to the Appellants' action[,]" because the City, "for two (2) years or more" assured Appellants that it would "remedy the issues caused by the defective Treasurer's Sale." Appellants' Brief at 26. Despite not being part of the record in this matter, Appellants point to a public Facebook post dated December 16, 2015 by Kevin Acklin (Acklin), Chief of Staff for the City's Mayor, in which Acklin expressed an intention "to preserve this public right of way for the greater Greenfield community."[14] Appellants' Brief at 26; *see infra* p. 17. Appellants allege that they "relied on [the City's] representations that the sale would be 'invalidated' and/or the 'public right of way' be preserved by eminent domain[,]" and, as a result,

---

[13] As a result of her failure to file a brief by the date ordered by this Court, we precluded Cronin from filing a brief and participating in oral argument. Cmwlth. Ct. Order dated 12/8/17.

[14] We note that Appellants cite to page 1474a of their reproduced record, which is an email containing the Facebook post. This document is not part of the trial court's original record provided to this Court. We may not consider anything that is outside the record. Pa.R.A.P. 1921 (stating, "[t]he original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases); Pa.R.A.P. 1921, Note (stating appellate court may consider only facts in record on appeal). Appellants have not indicated that the record from the trial court is incomplete. *See* Pa.R.A.P. 1921, Note ("Parties may rely on the list of documents transmitted to the appellate court and served on the parties. If the list shows that the record transmitted is incomplete, the parties have an obligation to supplement the record pursuant to Rule 1926 (correction or modification of the record) or other mechanisms in Chapter 19.").

11

Appellants "relax[ed] their vigilance" and did not take legal action "within the statute of limitations as prescribed by the [Treasurer's Sale] Act." *Id.*

The City, on the other hand, contends that an estoppel argument is not applicable as Section 303 of the Treasurer's Sale Act is a jurisdictional limitation. Additionally, the City points out that the Facebook post did not occur until December 16, 2015, over two years after the sale, and over one year after Appellants knew of the sale and that, therefore, Appellants were not lulled into non-vigilance. City's Brief at 13. The City argues that there is "no proof on the record of such claimed reliance" and, further, contends that the argument is "unconvincing" because Appellants filed their Petition two weeks after the Facebook post. *See id.*; Oral Argument 5/8/19. Additionally, the City points to a letter dated October 31, 2014 (Letter) from its Assistant City Solicitor addressed to Cronin's and Pisztora's counsel, stating that, after investigation, the City concluded that the sale was "done correctly." Oral Argument 5/8/19; *see* City's Brief at 5 (citing Letter, R.R. at 1307a, stating the Subject Property was "correctly included in the October 25, 2013 Treasurer's Sale for delinquent taxes"); Letter, O.R. Item 51, Appendix to Motion to Dismiss.

**ANALYSIS**

We begin by pointing out that we need not, and do not, decide whether Appellants had an ownership interest in the Subject Property, thereby making them "interested parties," or whether Appellants' easement by implication is an interest "of record," thereby making Appellants "interested parties." Even assuming, *arguendo*, that Appellants were entitled to notice, we agree with the City that, under the circumstances here, Appellants did not file a timely appeal and they did not seek to file their appeal *nunc pro tunc* with the trial court.

Initially, we note that, at oral argument, in response to the City's argument that Appellants never petitioned the trial court for *nunc pro tunc* relief, Appellants' counsel asserted that Appellants asked for such relief when they sought to amend the pleadings to conform to the evidence produced before the trial court, and the trial court denied that relief. Oral Argument 5/8/19. However, our review of the record reveals that, although the trial court granted Appellants' request to amend their Petition, such request did not seek to amend the Petition to make it an appeal *nunc pro tunc*.[15]

---

[15] At argument, Appellants' counsel acknowledged that the trial court granted Appellants the ability to amend their Petition, but asserted that the Motions to Dismiss were filed, and granted, before Appellants could do so. Oral Argument 5/8/19. Notably, Appellants had sought permission to amend their Petition only to include the constitutional claims that they had raised for the first time in their Motion for Summary Judgment, not for *nunc pro tunc* relief. *See* Hearing Transcript 5/9/17 at 3, R.R. at 1402a (Appellants' counsel stating Appellants seek to amend Petition to include four arguments raised in the Motion for Summary Judgment concerning equal protection, due process and claims under 42 U.S.C. § 1983); MSJ, R.R. at 1205a-14a. At the hearing held on May 9, 2017, the trial court granted Appellants' motion to amend, directing Appellants to file their amended pleading within 10 days, which would have been May 19, 2017. *See* R.R. at 1409a-10a; *see also* Appellants' Brief at 7 (stating trial court granted Appellants 10 days to file an amended petition to include constitutional claims). Despite Appellants' assertion that they could not file an amended petition due to the City and Cronin filing their Motions to Dismiss, Appellants' Brief at 7, there is nothing in the record to indicate that the City's and Cronin's filings prevented Appellants from filing an amended petition. The trial court did not dismiss Appellants' case until June 7, 2017, well after the 10-day period. On June 9, 2017, after the 10-day period within which Appellants were directed to file the amended pleading and after their case was dismissed, Appellants filed a "Motion to Conform the Pleadings to the Evidence and Leave to Amend pursuant to Pa.R.C.P. [No.] 1033" (Motion to Conform). R.R. at 1462a; *see* O.R. Item 59. The amended pleading was not attached to this motion and was never filed with the trial court. *See* Motion to Conform, O.R. Item 59. Additionally, the Motion to Conform sought only to amend the Petition to "conform to the evidence as set forth in the Motion for Summary Judgement [sic], a Brief in Support of the Motion for Summary Judgment and an Appendix in Support of the Motion for Summary Judgment" and to "include the causes of action raised in their Motion for Summary Judgment." *Id.* ¶¶ 7-8. The Motion to Conform did not seek *nunc pro tunc relief*. *See generally* Motion to Conform, O.R. Item 59.

Section 303 of the Treasurer's Sale Act requires an appeal to be filed within 30 days of the date of the treasurer's sale.[16] "[S]tatutory appeal periods are mandatory and may not be extended as a matter of grace or mere indulgence." *Stanton v. Dep't of Transp., Bureau of Driver Licensing*, 623 A.2d 925, 926 (Pa. Cmwlth. 1993).

We acknowledge that, generally, in tax sale cases, where a party was entitled to notice and did not receive notice, this Court has held that the tax sale was void *ab initio*. *In re Amended Petition of Tax Claim Bureau of Washington Cty.*, 149 A.3d 920, 926 (Pa. Cmwlth. 2016) (holding that where party challenging sale was entitled to notice and did not receive notice, sale was void *ab initio*). In relying on such precedent to argue that the 30-day time limitation for filing an appeal of the treasurer's sale never began to run Appellants essentially claim that there is no time limit in which they had to file the appeal and that they need not file an appeal *nunc pro tunc*. Appellants' argument effectively seeks to have this Court authorize an appeal period *ad infinitum*. Appellants, however, did not direct this Court to any case law wherein a party— *once the party acquired knowledge of the sale*— was granted a period of time in which to appeal that was greater than that allowed by statute.

Instead, in considering Appellants' argument that the 30-day time limitation for filing an appeal of the treasurer's sale never began to run, we note the persuasive value of this Court's unreported opinion in *In re Dauphin County Tax Claim Sale of 2001* (Pa. Cmwlth., No. 493 C.D. 2009, filed January 25, 2010), slip

---

[16] Section 303(a) of the Treasurer's Sale Act provides, in relevant part, "[a]n interested party whose vested right in property is adversely affected by the treasurer's sale may have 30 days in which to file an appeal with the court of common pleas contesting the regularity of the sale procedure." 53 P.S. § 27303(a).

14

op. at 3.[17]  In *In re Dauphin County Tax Claim Sale*, the property owner filed a "Motion for Leave to File Objections and Exceptions *Nunc Pro Tunc*" to the tax sale. *Id.* at 1.  In the motion, the property owner alleged that it did not receive any of the required notices.  *Id.* at 2.  The trial court denied the motion because the property owner filed it more than 30 days after gaining actual knowledge of the sale.  *Id.* at 1. The trial court reasoned that, in the usual case under the applicable statute, objections or exceptions must be filed within 30 days of the confirmation *nisi*, and although the applicable statute did not set a 30-day period for filing objections or exceptions *nunc pro tunc* after actual notice of a tax sale, "it would be absurd to interpret [the applicable statute] to allow a person with notice of a tax sale an indefinite period of time for requesting *nunc pro tunc* relief."  *Id.* at 3 (footnote omitted).  This Court affirmed and in doing so reasoned that had the trial court given more than 30 days from the time when the property owner gained actual knowledge of the sale for the property owner to file its objections and exceptions, "then [the property owner] would have been in a better position than a person who, unlike [the property owner], received notice of the tax sale and Confirmation *Nisi*."  *Id.* at 3.

Similarly, under the circumstances here, even if Appellants had requested *nunc pro tunc* relief before the trial court, it would be unreasonable and absurd to allow Appellants a period of time well in excess of that permitted under the law in order to request relief once they learned of the treasurer's sale.  *See In re Dauphin Cty. Tax Claim Sale*.  Indeed, the trial court found, and the record established, that Appellants knew of the sale for at least one year before they filed their Petition.  Specifically, Pisztora engaged legal counsel by August 1, 2014, and

---

[17] This Court's unreported memorandum opinions may be cited for persuasive value. Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a).

Appellants signed a petition regarding the sale on November 15, 2014. Trial Court Opinion at 4; *see* R.R. at 1302a & 1308a-12a. However, Appellants did not file their Petition until December 2015, over a year after learning of the sale. Were we to accept Appellants' argument here, effectively granting Appellants no time limit in which to appeal, doing so would place Appellants in a better position than others who received notice pursuant to Section 303 and are subject to the 30-day time limitation of Section 303. *See In re Dauphin Cty. Tax Claim Sale*, slip op. at 3. Appellants cannot rely on their claims of lack of proper notice to allow them to wait for an extended period of time to bring those claims once they have actual knowledge. *See id.*; *cf. Ercolani v. Dep't of Transp., Bureau of Driver Licensing*, 922 A.2d 1034, 1037 (Pa. Cmwlth. 2007) (stating that a petitioner in a *nunc pro tunc* appeal must proceed with reasonable diligence once he knows of necessity to take action). To the extent Appellants ask the Court to use equitable powers in this matter, we observe that "[e]quity aids the vigilant, not those who slumber upon their rights." *Northrup v. Pa. Game Comm'n*, 458 A.2d 308, 310 n. 2 (Pa. Cmwlth. 1983) (quoting *Riley v. Boynton Coal Co.*, 157 A. 794, 795 (Pa. 1931)); *see also City of Philadelphia v. Aston* (Pa. Cmwlth., No. 249 C.D. 2018, filed December 6, 2018), slip op. at 8 (quoting *Northrup* when rejecting petitioner's claim that the court use equitable powers to set aside tax sale where, among other things, petitioner waited more than 40 days after she was allowed to intervene to file a petition to set aside a tax sale, which petition was nearly identical to a prior petition filed by petitioner, which prior petition the trial court had denied because petitioner was not a party to the underlying proceedings and, therefore, lacked standing). Equity "is not a back door to be used when one sits on his legal rights and lets them expire." *Dorfman v. Pa. Social Servs. Union – Local 668 of Serv. Emps. Int'l Union*, 752 A.2d 933, 938

16

(Pa. Cmwlth. 2000) (Flaherty, J., concurring); *see also Aston*, slip op. at 8 (quoting *Dorfman*, (Flaherty, J., concurring)).

Further, although Appellants argue that they were lulled into non-vigilance, pointing to the December 16, 2015 Facebook post, the trial court found, "[t]here is no explanation on the record as to why [Appellants] waited more than two years to take any steps to set aside this sale." Trial Court Opinion at 4. Our review of the original record from the trial court reveals that Appellants did not offer the Facebook post as evidence before the trial court, nor did Appellants advance before the trial court the argument that they delayed filing their Petition because they were lulled into non-vigilance. *See generally* O.R. Item 56, Appellants' Response In Opposition To Motions to Dismiss, R.R. at 1333a-51a; Hearing Transcript (H.T.) 5/17/17 at 16-22, R.R. at 1381a-86a. This Court may not consider evidence or assertions that were not part of the record before the trial court. *See* Pa.R.A.P. 1921 & Note (stating what constitutes the record on appeal and that appellate court can only consider facts in the record); *Tennyson v. Zoning Hearing Bd. of W. Bradford Twp.*, 952 A.2d 739 (Pa. Cmwlth. 2008) (stating assertions that are outside the record may not be considered on appeal); *supra* note 14.

For the foregoing reasons, the trial court did not err as a matter of law in dismissing Appellants' Petition.[18]

Nevertheless, the Dissent asserts that there was no time limit within which Appellants had to file their appeal because the trial court lacked jurisdiction and because the sale was void due to the lack of notice to Appellants. Regarding the purported lack of subject matter jurisdiction, the trial court had jurisdiction over the subject matter of the tax sale. *See* Section 303 of Treasurer's Sale Act, 53 P.S. §

---

[18] Because of our disposition, we need not address Appellants' remaining arguments.

17

27303 (stating, an "interested party whose vested right in property is adversely affected by the treasurer's sale may have 30 days in which to file an appeal with the court of common pleas contesting the regularity of the sale procedure" and that "the court shall enter an order either upholding the regularity of the sale or requiring the property to be listed for the next treasurer's sale"). With respect to Appellants' failure to receive notice, the Dissent's position is premised on the erroneous assumption that Appellants were entitled to notice. However, as will be explained, and as the trial court found, Appellants never established that they had an "interest of record" that would have made them "interested parties" entitled to notice.

The Dissent accuses the City of using the Treasurer's Sale Act as a "substitute for a quiet title action" and states, "[t]he Treasurer's Sale Act is not the vehicle by which to establish the ownership" of the Subject Property. Dissent at 1 & 3 (emphasis omitted). Yet, establishing ownership of the Subject Property is precisely what Appellants tried to do in this action and it is the focus of the Dissent.[19] The Dissent states, "[r]egardless of what interest is held by the 'grantees' of lots adjacent to the Subject Property, the Coynes have no interest. Neither do their heirs, assuming any exist."[20] Dissent at 3. While we disagree with the Dissent that the Coynes or, more accurately, their heirs, held "zero interest" in the Subject Property, and even assuming that the City served "dead people," whether the Coynes—or their heirs—should have received notice is not the issue. This attempt to shift the focus

_____

[19] An objection to a Treasurer's Sale Act is not an action by which one can establish the ownership of a parcel of property. Rather, a quiet title action would be the appropriate action for such a determination. *See* Pa.R.C.P. No. 1061 (stating a quiet title action may be brought to determine any title or interest in the land).

[20] We note there is nothing in the record to establish whether Coyne heirs exist, whether a deed ever transferred the Coynes' interest in the Subject Property, or whether a dedication of the Private Street ever occurred. There is nothing in the record that tracks the Coynes' fee interest in the Subject Property.

18

of this matter to the Coynes is misplaced, as whether the Coynes are, in fact, the record owners of the Subject Property is not before us. Rather, the only issue before this Court is whether Appellants established that they were "interested parties," i.e., that they have an "interest of record," thereby entitling them to notice under the Treasurer's Sale Act. *See supra* p. 5 (quoting 53 P.S. § 27102).

With respect to the interest of the adjacent lot owners, i.e., Appellants here, the Dissent correctly notes the following statements of law:

> Our courts have established that "where the side of a street is called for as a boundary in a deed, the grantee takes title in fee to the center of the street if the grantor had title to that extent and did not expressly or by clear implication reserve it." *Heller v. Borough of South Williamsport*, 408 A.2d 1172, 1173 n.2 (Pa. Cmwlth. 1979); *see also Rahn v. Hess*, 106 A.2d 461, 464 (Pa. 1954). There is a distinction between properties bounded by public streets and properties bounded by private streets. *Justin J. Powell, Inc. v. Wian*, 318 A.2d 346, 350 (Pa. 1974). "Where the street called for as a boundary is not a public highway nor dedicated to public use, the grantee does not take title to the middle of it but acquires an easement by implication over it." *Beechwood v. Reed*, 265 A.2d 624, 626 (Pa. 1970) (emphasis added).

Dissent at 2.

Also relevant is *Allen v. Sheib*, 101 A. 102 (Pa. 1917), wherein our Supreme Court reviewed a deed that described the property boundary as "along a certain road," and that road was a private road. *Id.* at 102-03. The Supreme Court ruled that such reference in the deed did not show that title to the fee had passed. *Id.* at 103. The Supreme Court further stated that the reference to the road, and especially the "private road," as the boundary in the deed indicated that the deed owner held an easement interest rather than a fee interest. *Id.* The Supreme Court

19

went on to state that "[t]he mere reference in a conveyance to a private road does not tend to show ownership in fee thereof in the party for whose use it may have been established." *Id.* at 104.

More recently, our Supreme Court discussed *Allen* in the case of *Starling v. Lake Meade Property Owners Association, Inc.*, 162 A.3d 327 (Pa. 2017), which involved a dispute over ownership of, *inter alia*, a road in a homeowners association where lots were conveyed by reference to a recorded subdivision plan. *Id.* at 330-31 nn.4 & 6. Our Supreme Court noted that *Allen* does not suggest that a subdivision owner conveys, abandons or extinguishes its fee in the road simply by selling off subdivision lots. *Starling*, 162 A.3d at 344.

Thus, the passing of title depends on whether the streets serving as the boundary lines, here the Private Street and Private Alleyway, were public or dedicated to public use. *See Beechwood*; *Allen*. Although the Dissent stops short of expressly stating that Appellants have an ownership interest in the Subject Property, this is the implication. Under the circumstances here, the Dissent's reliance on *Heller* and *Rahn* to imply that title passed to Appellants based on the Private Alleyway and/or the Private Street serving as a boundary for Appellants' property is unsupported.[21] The Dissent effectively implies the passage of ownership to

---

[21] Notably, although Appellants' Motion for Summary Judgment raised an argument alleging they had title to the center line of the Subject Property based on boundary descriptions in their deeds, MSJ ¶¶ 42-46, R.R. at 1196a, Appellants' Petition did not assert this claim as a basis for entitlement to notice. Appellants also did not attach their deeds as exhibits to the Petition. *See* Pa.R.C.P. No. 1019(i) (stating that when any claim is based upon a writing, the pleader shall attach a copy of the writing). As such, the argument is waived. *See* Pa.R.C.P. No. 1019(a) (stating that the pleading shall contain the material facts on which a cause of action is based). Further, because the issue before us is whether Appellants were entitled to notice and because Appellants did not claim in their Petition that the boundary description in their deed necessitated notice to them, this argument fails.

Nevertheless, counsel for the City agreed that all deeds use Coyne Terrace as a boundary. *See* H.T. 5/9/17, R.R. at 1420a-21a. Oddly, however, lot numbers 2 and 3 do not even abut Coyne

20

Appellants because Appellants' properties abut the Private Street and/or the Private Alleyway and no deed reciting a reservation of the Coynes' ownership interest in the Subject Property was presented. Dissent at 3. Contrary to the Dissent's assertion, however, the fact that no such deed was presented is not determinative, as this was not the only way for the Coynes to have "expressly or by clear implication" reserved an ownership interest in the Subject Property.

"[D]edication largely depends on the intention of the owner of land." *Coffin v. Old Orchard Dev. Corp.*, 186 A.2d 906, 909 (Pa. 1962). "A dedication to the public use must rest on the intention or clear assent of the owner, and must be under such circumstances as to indicate an abandonment to the use of the community." *Id.* at 909 (quotation marks and citation omitted). "Where the dedication of a street is sought to be established . . . by the recording of a plan . . . the evidence must be clear." *Id.* Whether land is dedicated for public use is a question of intention, which is a question of fact. *See Borough of Mountville v. Gable*, 73 Pa. Super. 189, 189 (1919) (stating it is generally for jury to determine whether it was owner's intention to dedicate land).

The Coyne Plan expressly designated the Private Street as "private" and the only access to the Private Alleyway was off of the Private Street. "A private road is private property." *Paul v. Carver*, 24 Pa. 207, 211 (1855); *see also Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. Co.*, 87 A. 968, 970 (Pa. 1913) (quoting *Paul*). Even Appellants stipulated to the fact that after City Ordinance 334 opened a portion of Coyne Terrace, "[t]he remainder of Coyne Terrace *remained a Private Street*." Stipulation ¶ 11 (emphasis added). The trial

---

Terrace. *See* Coyne Plan, R.R. at 1018a. Lot 3 belongs to the Sturms. The Stipulation did not expressly include the Private Alleyway. *See* H.T. 5/9/17, R.R. at 1420a-21a. Pisztora's deed, attached as an exhibit to Appellants' Motion for Summary Judgment, describes the property as running "along a 10 foot way" and along "Coyne Terrace." R.R. at 1144a.

court, as the factfinder, did not find that the Coyne Plan was clear evidence of the Coynes' intention to dedicate the Subject Property or to divest themselves of their interest in the Subject Property. *See Coffin*, 186 A.2d at 909. Rather, the trial court expressly found that Appellants established nothing more than a possible ownership interest in the Subject Property. Trial Court Op. at 4. Because the Subject Property was neither a public highway nor dedicated to public use, the Appellants did not take title to the middle of the Subject Property.

The Dissent correctly notes that Appellants have an access easement over the Subject Property. However, we cannot agree with the Dissent's conclusion that merely having a plan that depicts a lot abutting or adjacent to a street gives the lot owner an "interest of record." While the physical relationship of the lots to the street may be "visible and apparent," that tells nothing about whether any interest exists, or the nature of such interest. This is because Appellants' easement interest here is an implied easement which arises by operation of law. Indeed, "an easement by reference to a map or plan is *not an express easement but rather an easement by implication.*" *Assalita v. Chestnut Ridge Homeowners Ass'n*, 866 A.2d 1214, 1219 (Pa. Cmwlth. 2005) (emphasis added) (quotation marks and citation omitted); *see Potis v. Coon*, 496 A.2d 1188, 1191 (Pa. Super. 1985) (stating that an easement by reference to a map is a particular type of implied easement). Thus, Appellants' interest is implied by law and therefore is not an interest "of record," which is necessary for Appellants to be deemed "interested parties." *See* 53 P.S. § 27102 (defining "interested party").

To provide that the Coyne Plan gives Appellants an "interest of record" in the Subject Property would mean that their interest is apparent from the recorded

document.[22]  Further, a municipal taxing body is not required to perform the equivalent of a title search or to make decisions to quiet title when determining the proper subjects of notice of a tax sale.  *See Fernandez v. Tax Claim Bureau of Northampton Cty.*, 925 A.2d 207 (Pa. Cmwlth. 2007); *Krawec v. Carbon Cty. Tax Claim Bureau*, 842 A.2d 520 (Pa. Cmwlth. 2004); *Farro v. Tax Claim Bureau of Monroe Cty.*, 704 A.2d 1137 (Pa. Cmwlth. 1997).  As such, when a property is to be sold at tax sale, a municipal taxing body is not required to:  perform a title search to locate the recorded subdivision plan where a parcel is located; examine the plan; make a legal determination that the delinquent Subject Property is not a typical parcel, but is in fact a private street and private alleyway that were never dedicated for public use, the existence of which, by operation of law, gives rise to an unexpressed, but implied, easement of access to the abutting landowners of the private street and private alleyway.

Additionally, we note that Appellants conceded at oral argument, based on the Superior Court's decision in *Cunningham*, that Appellants' implied easement interest in the Subject Property is not adversely affected by the sale.  *See also Tide-Water Pipe Co. v. Bell*, 124 A. 351, 355 (Pa. 1924) (stating that where "land is sold for taxes, an easement, servitude, or interest in the nature of an easement is not destroyed, but the purchaser takes subject thereto").  This Court has held that

---

[22] The phrase "of record" is not defined in the Treasurer's Sale Act, so we must use the common dictionary definition.  *See* Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903 (stating that where terms are not otherwise defined in a statute, "[w]ords and phrases shall be construed according to their common and approved usage"); *Gmerek v. State Ethics Comm'n*, 751 A.2d 1241, 1260 (Pa. Cmwlth. 2000) (stating dictionaries are generally used for determining common and approved usage of term), *aff'd*, 807 A.2d 812 (Pa. 2002).  "Of record" means "to set down in writing: make a written account or note of" or "to cause to be noted officially in or as if in writing[.]"  *See* Record, Webster's Third New International Dictionary 1898 (2002).  Accordingly, an ownership interest must be express.  The Coyne Plan is not a writing evidencing an express ownership or easement interest; it is a depiction of the subdivision.

where a tax statute provides the procedures for contesting a tax sale by setting forth who may challenge the sale and a challenger does not fall within the definition of those possible challengers, the challenger lacks standing to appeal. *See Plank v. Monroe Cty. Tax Claim Bureau*, 735 A.2d 178, 181 (Pa. Cmwlth. 1999). Here, the Treasurer's Sale Act provides that "[a]n *interested party* [i.e., "a person who has an interest of record in the property[,]" 53 P.S. § 27102] whose vested right in property is *adversely affected* by the treasurer's sale" may appeal and contest the regularity of the sale procedure. 53 P.S. § 27303 (emphasis added). Because their interest has not been adversely affected by the sale, Appellants have no standing under the Treasurer's Sale Act to challenge the sale, and thus, they cannot assert that the sale should be declared void *ab initio*.[23]

Accordingly, we affirm the trial court's order to the extent that it dismissed Appellants' Petition as untimely.

 

_____
CHRISTINE FIZZANO CANNON, Judge

---

[23] We acknowledge that it appears that the City did not raise the issue of Appellants' lack of standing to appeal before the trial court. However, where, as here, a statute defines who may appeal, standing becomes interwoven with subject matter jurisdiction to the point that the court can raise the issue *sua sponte*. *In re G.D.*, 61 A.3d 1031 (Pa. Super. 2013).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: City of Pittsburgh Treasurer's : 
Sale of Properties for Delinquent : 
Taxes – October 25, 2013 : 
 : 
 : 
Henrieta Pisztora, Mary Alice Sturm : 
and Stephen W. Sturm, husband and : 
wife, Gregory J. Walsh and Marianne : 
B. Walsh : 
 : 
              v. : 
 : 
City of Pittsburgh and Beth Cronin : 
 : 
Appeal of: Henrieta Pisztora, Mary : 
Alice Sturm, Stephen W. Sturm, : 
Gregory J. Walsh and Marianne B. :    No. 897 C.D. 2017
Walsh : 

# O R D E R

AND NOW, this 1st day of November, 2019, the June 7, 2017 order of the Court of Common Pleas of Allegheny County is AFFIRMED in accordance with the foregoing opinion.

 

 

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: City of Pittsburgh Treasurer's Sale of Properties for Delinquent Taxes – October 25, 2013 | : : : : | |
| Henrieta Pisztora, Mary Alice Sturm and Stephen W. Sturm, husband and wife, Gregory J. Walsh and Marianne B. Walsh | : : : : : : | |
| v. | : : | No. 897 C.D. 2017 Argued: May 8, 2019 |
| City of Pittsburgh and Beth Cronin | : : | |
| Appeal of: Henrieta Pisztora, Mary Alice Sturm, Stephen W. Sturm, Gregory J. Walsh and Marianne B. Walsh | : : : : | |

BEFORE:     **HONORABLE MARY HANNAH LEAVITT,** President Judge
                 **HONORABLE RENÉE COHN JUBELIRER,** Judge
                 **HONORABLE ROBERT SIMPSON,** Judge
                 **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                 **HONORABLE ANNE E. COVEY,** Judge
                 **HONORABLE MICHAEL H. WOJCIK,** Judge
                 **HONORABLE CHRISTINE FIZZANO CANNON,** Judge

<u>**OPINION NOT REPORTED**</u>

**DISSENTING OPINION BY**
**JUDGE COHN JUBELIRER**                       **FILED: November 1, 2019**

This case is actually quite simple. The City of Pittsburgh (City) used a statute enacted for collection of delinquent real estate taxes to establish ownership of real property. A tax collection statute is not, however, a substitute for a quiet title action, and it took legal gymnastics for the City to use the Second Class City Treasurer's

Sale and Collection Act[1] (Treasurer's Sale Act) for this purpose. Not the least of these gymnastics was the City's treatment of John J. Coyne and Mary Coyne (the Coynes), who filed the Coyne Plan of Lots (Coyne Plan) with the City in March **1930**, as the "record" owners of interest of the Private Road and Private Alleyway (Subject Property) and "delinquent taxpayers" in **2013**, dutifully sending them a notice of the impending tax sale of their property. In doing so, the City had, as the Court of Common Pleas of Allegheny County (trial court) stated, "served dead people." (Hr'g Tr. at 9, Reproduced Record (R.R.) at 1408a.) The City may as well have named Ichabod Crane and Little Bo Peep as the delinquent taxpayers in the tax sale notices it sent.

Even so, the decedents, resurrected for purposes of the tax sale of the Subject Property, had zero interest in that property. Nor did their heirs. Our courts have established that "where the side of a street is called for as a boundary in a deed, the grantee takes title in fee to the center of the street if the grantor had title to that extent and did not expressly or by clear implication reserve it." *Heller v. Borough of S. Williamsport*, 408 A.2d 1172, 1173 n.2 (Pa. Cmwlth. 1979); *see also Rahn v. Hess*, 106 A.2d 461, 464 (Pa. 1954). There is a distinction between properties bounded by public streets and properties bounded by private streets. *See Justin J. Powell, Inc. v. Wian*, 318 A.2d 346, 350 (Pa. 1974). "Where the street called for as a boundary is not a public highway nor dedicated to public use, the grantee does not take title to the middle of it but acquires an easement by implication over it." *Beechwood v. Reed*, 265 A.2d 624, 626 (Pa. 1970).

The Coyne Plan, created and recorded by the Coynes in 1930, subdivided property into 28 lots and, bisecting that plan, was a street named Coyne Terrace that

---

[1] Act of October 11, 1984, P.L. 876, 53 P.S. §§ 27101-27605.

was marked "private," and the Private Alley.[2] (Stipulation of Facts ¶¶ 7-9, 12, R.R. at 1083a-84a.) The properties owned by Appellants Henrieta Pisztora (Pisztora), Stephen W. Sturm and Mary Alice Sturm (together, Sturms), and Gregory J. Walsh and Marianne B. Walsh (together, Walshes) are all lots within the Coyne Plan. (Stipulation of Facts ¶ 13, R.R. at 1084a.) The private part of Coyne Terrace and/or the Private Alleyway serve as the boundary for Appellants' properties, as their properties either abut and/or are adjacent to one or the other. (Stipulation of Facts ¶¶ 14-15, R.R. at 1084a.) For the Coynes or their heirs to own that portion of Coyne Terrace, a reservation of that ownership interest had to be recited in the deeds held by the grantees of lots adjacent to the Subject Property. *Beechwood*, 265 A.2d at 626; *Heller*, 408 A.2d at 1173 n.2. However, no deed with a reservation of interest in the Coynes was ever presented. Regardless of what interest is held by the "grantees" of lots adjacent to the Subject Property, the Coynes have no interest. Neither do their heirs, assuming any exist.

The Treasurer's Sale Act is **not** the vehicle by which to establish the ownership of that part of the Subject Property that the City wants to tax. The Treasurer's Sale Act is not a substitute for a quiet title action or an eminent domain proceeding. The City sent written notices to the Coynes, knowing they were dead and could not be the owners of any part of the Subject Property. Such actions make a mockery of the law, constitutional and statutory.

The whole proceeding here was backwards. The City should have first determined ownership of the parcel; then assessed the property; then taxed the now-

---

[2] While a part of Coyne Terrace was opened as a public street via a City Ordinance in 1948, the remaining part, i.e., the Private Road and the Private Alleyway were not. (Stipulation of Facts ¶¶ 10-11, R.R. at 1083a-84a.)

RCJ - 3

known property owners. All of this had to take place before the City's Treasurer could pursue any delinquent taxpayer for unpaid real estate taxes.

As for Appellants' interests, Appellants have, at a minimum, access easements over the Subject Property that was established via the Coyne Plan, a document recorded with the City. *See, e.g.*, *Cox's Inc. v. Snodgrass*, 92 A.2d 540, 541 (Pa. 1952) (holding that a grantee of a lot "sold according to a plan of lots on which streets or alleys not previously opened or projected as a public street are plotted out by the grantor, acquires an easement over those streets and alleys as a private right of property arising out of the grant . . . ."); *Cunningham v. Cronin*, 206 A.3d 569, 573 (Pa. Super. 2019) (holding that property owners within the Coyne Plan have easements by implication over the Subject Property). The fact that the lots now owned by Appellants abutted and/or were adjacent to the Subject Property was visible and apparent on the Coyne Plan and, therefore, Appellants' interests should be considered of record. *See Pocono Highland Lake Estates Prop. Owners Ass'n v. Palys*, 56 Pa. D. & C.4th 129, 132 (2002), *aff'd on the trial court opinion*, 822 A.2d 879 (Pa. Cmwlth. 2003) (emphasis added) (holding that a "path depicted on [a recorded subdivision] map was **visible** and **apparent** to any persons searching the title prior to the time the defendants took title to their lots," which established the existence of an access easement over the depicted path). Pursuant to Sections 102 and 203(a) of the Treasurer's Sale Act, 53 P.S. §§ 27102, 27203(a), Appellants were entitled to written notice of the tax sale as they hold "interest[s] of record" making them "interested part[ies]." It is undisputed that, notwithstanding the presence of the recorded Coyne Plan and other evidence suggesting Appellants' interest in the Subject Property, the City did not send written notice to anyone other than the resurrected Coynes.

This tax sale proceeding did not yield a valid sale. The trial court lacked jurisdiction under the Treasurer's Sale Act to establish the ownership of the Subject Property and the identity of the responsible taxpayer. An order by a court that lacks jurisdiction over the subject matter or of the person is null and void. *DeCoatsworth v. Jones*, 639 A.2d 792, 796 (Pa. 1994). "[I]t is never too late to attack a judgment or decree for want of jurisdiction" and the "question is always open." *In re Maoying Yu*, 121 A.3d 576, 583 n.9 (Pa. Cmwlth. 2015) (quoting *DeCoatsworth*, 639 A.2d at 796) (alteration added) (internal citations omitted). Further, the tax "sale [was] void" because the City did not comply with the Treasurer's Sale Act's notice requirements when it did not provide written notice to Appellants. *See In re Upset Sale Tax Claim Bureau McKean Cty. (Miller Appeal)*, 965 A.2d 1244, 1246-47 (Pa. Cmwlth. 2009) (citation omitted). While an action that is "voidable" is "[v]alid until annulled," an action that is "void" is "[o]f no legal effect; null." Black's Law Dictionary 1709 (9th ed. 2009). I do not embrace the Majority's position that the passage of time and an alleged lack of vigilance has the effect of precluding Appellants from challenging an action that is "[o]f no legal effect." *Id.* For these reasons, I respectfully dissent and would reverse the trial court's order and remand with instructions for the trial court to deny the Motions to Dismiss, and grant Appellants' Motion for Summary Judgment to the extent of striking the deed the City issued to Beth Cronin as a result of the invalid tax sale.

 

 

**RENÉE COHN JUBELIRER,** Judge

 

President Judge Leavitt and Judge McCullough join this dissenting opinion.

RCJ - 5